# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | Adv. P. No. 23-05005 (JAM) |
| Plaintiff, | Re: ECF Nos. 77, 122 |
| v. | |
| GREENWICH LAND, LLC, and HING CHI NGOK, | |
| Defendants. | |

## **APPEARANCES**

Avram E. Luft (argued)[1]
G. Alexander Bongartz
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

Douglas Skalka
Patrick R. Linsey
Neubert, Pepe & Montieth
195 Church Street, 13th Floor
New Haven, CT 06510

and

Nicholas A. Bassett
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

*Counsel for Movant Mr. Luc A. Despins, Chapter 11 Trustee for the Estate of Mr. Ho Wan Kwok, Plaintiff*

---

[1] Since the argument on these matters, Attorney Luft has withdrawn his appearance. (ECF Nos. 131, 132.)

Christopher J. Major (argued)
Austin D. Kim
Meister Seelig & Fein PLLC
125 Park Avenue, 7th Floor
New York, NY 10017

   *Counsel for Respondents Greenwich Land, LLC and Ms. Hing Chi Ngok, Defendants*

## MEMORANDUM OF DECISION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

*Julie A. Manning, United States Bankruptcy Judge*

## I.    INTRODUCTION

Before the Court is the Motion for Summary Judgment (the "Motion for Summary Judgment" or the "Motion") filed by the plaintiff Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Mr. Ho Wan Kwok (the "Individual Debtor").  (ECF No. 77.) [2]  The Motion seeks summary judgment in favor of the Trustee on the first and second claims (respectively, the "First Claim" and the "Second Claim") of the complaint (the "Complaint") (ECF No. 1) filed against the defendants Greenwich Land, LLC ("Greenwich Land") and Ms. Hing Chi Ngok ("Ms. Ngok" and, together with Greenwich Land, collectively, the "Greenwich Parties").  The First and Second Claims allege, respectively, that Greenwich Land is the *alter ego* of and/or is beneficially owned by the Individual Debtor.  For the reasons stated below, the Motion is **GRANTED**.

## II.    BACKGROUND

On February 15, 2022, the Individual Debtor filed a voluntary Chapter 11 petition in this Court.  (Main Case ECF No. 1.)  The Individual Debtor's Chapter 11 case is jointly administered with the voluntary Chapter 11 cases of two affiliated corporate debtors.  (Main Case ECF Nos.

---

[2]  References to the docket in this adversary proceeding will be styled "ECF No. __." References to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled "Main Case ECF No. __."

970, 1141.)  For the reasons set forth therein, on June 15, 2022, the Court entered a

memorandum of decision and order appointing a Chapter 11 trustee.  (Main Case ECF No. 465.)

*In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022).  On July 8, 2022, Mr. Despins was appointed

as the Trustee.  (Main Case ECF No. 523.)

Ms. Ngok is the sole member of Greenwich Land and is currently its only officer.  Ms.

Ngok is the Individual Debtor's wife.[3]  Greenwich Land is the record owner of, among other

things, the property commonly known as 373 Taconic Road, Greenwich, Connecticut (the

"Taconic Property").  The Individual Debtor listed the address of the Taconic Property as his

mailing address in his Chapter 11 case.  (Main Case ECF No. 81.)  Greenwich Land formerly

owned another piece of real estate, namely, the property commonly known as 33 Ferncliff Road,

Cos Cob, Connecticut (the "Ferncliff Property").

On March 27, 2023, the Trustee commenced this adversary proceeding by filing the

Complaint.  (ECF Nos. 1 (redacted), 3 (sealed).)  The Complaint pleads two claims for relief:

> (i)  the First Claim (Complaint ¶¶ 57–62) seeks, pursuant to sections 541, 542, and
> 544 of title 11 of the United States Code (the "Bankruptcy Code"), a declaratory
> judgment that Greenwich Land is the Individual Debtor's *alter ego* and, on that basis,
> turnover of Greenwich Land's assets to the Estate, including the Taconic Property and
> other assets, such as the proceeds of the post-petition sale of the Ferncliff Property (the
> "Ferncliff Proceeds"), via delivery of the same to the Trustee; and

> (ii)  the Second Claim (Complaint ¶¶ 63–66) seeks, pursuant to sections 541, 542, and
> 544 of the Bankruptcy Code, a declaratory judgment that Greenwich Land is beneficially
> owned by the Individual Debtor and, on that basis, turnover of Ms. Ngok's membership
> interest in Greenwich Land to the Estate via delivery of the same to the Trustee.

On May 9, 2023, the Greenwich Parties filed an answer to the Complaint.  (ECF No. 34.)

---

[3]  Based on statements made in the Individual Debtor's Chapter 11 case and related adversary
proceedings, the Trustee appears to dispute whether Ms. Ngok and the Individual Debtor are
legally married.  No conclusion of law relating to the legal nature of the relationship between
Ms. Ngok and the Individual Debtor is made in this decision.

On the same day the Complaint was filed, the Trustee filed an *ex parte* application for prejudgment remedy and an *ex parte* motion for a temporary restraining order.  (ECF Nos. 4, 11, 12.)  On March 28, 2023, for the reasons stated therein, the Court granted a prejudgment remedy and entered a temporary restraining order (the "TRO").  (ECF Nos. 14, 15.)  On May 26, 2023, a consensual preliminary injunction entered (the "Consensual PI").  (ECF No. 53.)

On June 5, 2023, the Court entered a pretrial order (as amended, the "Pretrial Order"). (ECF Nos. 56, 68, 75, 91.)  On September 15, 2023, in accordance with the terms of the Pretrial Order, fact discovery was completed in this adversary proceeding.

On October 10, 2023, the Trustee filed the Motion for Summary Judgment.  (ECF No. 77.)  The Motion seeks summary judgment on both the First and Second Claims.  Together with the Motion, the Trustee filed:

> (i)  a memorandum of law in support (ECF Nos. 78 (redacted), 82 (sealed));

> (ii)  a Local Civil Rule 56(a)(1) statement of undisputed facts (the "L.R. 56(a)(1) Statement") (ECF Nos. 79 (redacted), 83 (sealed)); and

> (iii)  a declaration of counsel (the "Barron Declaration") with attached exhibits (each a "Trustee Exhibit" and together, collectively, the "Trustee Exhibits") (ECF Nos. 80 (redacted), 84 (sealed)).

On November 14, 2023, the Greenwich Parties filed:

> (iv)  a response in opposition to the Motion (ECF No. 106);

> (v)  a Local Civil Rule 56(a)(2) statement of undisputed facts (the "L.R. 56(a)(2) Statement") (ECF No. 105); and

> (vi)  a declaration of counsel (the "Major Declaration") with attached exhibits (each a "Greenwich Exhibit" and together, collectively, the "Greenwich Exhibits") (ECF No. 104).

On December 8, 2023, the Trustee filed:

> (vii)  a reply in support of the Motion (ECF Nos. 111 (redacted), 115 (sealed));

   (viii)  a reply to the L.R. 56(a)(2) Statement (the "Reply Statement" and together with the L.R. 56(a)(1) Statement and the L.R. 56(a)(2) Statement, collectively, the "Statements") (ECF Nos. 112 (redacted), 116 (sealed)); and

   (ix)  a supplemental declaration of counsel (the "Supplemental Barron Declaration") with attached supplemental exhibits (each a "Supplemental Trustee Exhibit" and together, collectively, the "Supplemental Trustee Exhibits", and, together with the Reply Statement and Supplemental Barron Declaration, collectively, the "Reply Documents"), consecutively enumerated with the Trustee Exhibits (ECF Nos. 113 (redacted), 117 (sealed)).

This matter is fully briefed.

   On January 5, 2024, the Greenwich Parties filed a motion to strike (the "Motion to Strike") the Reply Documents.  (ECF No. 122.)  On January 7, 2024, the Trustee filed an objection to the Motion to Strike.  (ECF No. 123.)

   On January 9, 2024, a hearing was held on the Motion for Summary Judgment, during which the Greenwich Parties pressed the Motion to Strike.  (*See* Hr'g Tr. 61:7 *et seq.*, ECF No. 127.)  At the conclusion of the hearing, the Court took the Motion for Summary Judgment and the Motion to Strike under advisement.

   This matter is ripe for adjudication.

## III.    JURISDICTION

   The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the District of Connecticut dated September 21, 1984.  The issues raised by the Motion are statutorily core.  28 U.S.C. §§ 157(b)(2)(A), (E).

   A motion to withdraw the reference to this Court of this adversary proceeding is pending in the District of Connecticut.  *Greenwich Land, LLC v. Despins ex rel. Kwok (In re Kwok)*, No. 23 mc 00062 (KAD) (D. Conn. Nov. 9, 2023).  While the Court concludes that the Constitution

5

does not preclude it from ruling on the Motion for Summary Judgment, should a reviewing court disagree in whole or in part, the Court submits this decision, or pertinent portion thereof, as proposed conclusions of law.  *See* Fed. R. Bankr. P. 9033; *cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

The Greenwich Parties also argue that this matter is not properly before the Court because the Trustee has failed to join necessary parties to this adversary proceeding.  The Court disagrees.  The First Claim seeks relief against Greenwich Land.  The Second Claim seeks relief against Ms. Ngok.  The Court can "accord complete relief among existing parties" and none of the persons and entities named by the Greenwich Parties "claims an interest relating to the subject of the action and is so situated that disposing of the action in  the person's absence may . . . impair or impede that person's ability to protect the interest; or . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a), *made applicable by* Fed. R. Bankr. P. 7019.

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV.    SUMMARY JUDGMENT STANDARD

Upon a motion for summary judgment, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) *made applicable by* Fed. R. Bankr. P. 7056.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Nick's Garage,*

*Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114–15 (2d Cir. 2017) (citing *Anderson*).  While

a movant "bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact," a movant is not required to "support its motion with

affidavits or other similar materials negating the opponent's claim."  *Celotex Corp. v. Catrett ex

rel. Catrett*, 477 U.S. 317, 323 (1986).  Where the movant meets its factual burden, an "opponent

must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Hicks v.

Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

      Finally, to succeed on the motion, the movant must be entitled, upon the undisputed

material facts, to judgment as a matter of law – the judge, in ruling on the motion, is not acting as

a finder of fact.  *Anderson*, 477 U.S. at 250.  Summary judgment should enter "where the

evidence is such that it 'would require a directed verdict for the moving party.'"  *Id.* at 251

(internal citations omitted).

## V.  UNDISPUTED FACTS

      Before setting forth the undisputed facts[4] for the purposes of the Motion for Summary

Judgment, the Court must first rule on (A) the Motion to Strike and (B) the various evidentiary

objections raised by the Greenwich Parties under Fed. R. Civ. P. 56(c)(2) and (4), as made

applicable by Fed. R. Bankr. P. 7056, in their objection to the Motion and the L.R. 56(a)(2)

Statement as well as the evidentiary objections raised by the Trustee to the statement of

additional material facts in the L.R. 56(a)(2) Statement.

---

[4]  For purposes of citation in the discussion below, each is cited as an "Undisputed Fact".

### A.  Motion to Strike

In the Motion to Strike, the Greenwich Parties request that the Court strike the Reply

Documents as impermissible filings on reply.  The Greenwich Parties argue that replies to Local

Civil Rule 56(a)(2) statements are categorically disallowed and, in the alternative, requested an

opportunity to file a surreply and a continuation of the hearing on the Motion for Summary

Judgment.  The Trustee argues that it is within the Court's discretion whether to consider the

Reply Documents.

The Court agrees with the Trustee that courts have broad discretion to consider argument

and evidence first introduced on reply when determining motions for summary judgment.  *See*

*Bayway Refin. Co. v Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–227 (2d Cir. 2000);

*Compania del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venez.*, 556 F. Supp. 2d

272, 283 n. 40 (S.D.N.Y. 2008) (considering arguments and evidence submitted with reply

despite belated argument by plaintiff's substitute counsel) *affirmed by* 341 F. App'x 722, 724 (2d

Cir. 2009) (citing *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)); *see also*

*KLP Enters., LLC v. Sassani*, No. 3:17-cv-665 (MPS), 2018 WL 4516667, at *5 (D. Conn. 2018)

(noting broad discretion and declining to consider exhibits submitted with reply because

discovery had not closed and the exhibits were a surprise) (citing *Bajo Caroni*, 341 F. App'x at

724); *Beck v. Rayco Mfg., Inc.*, No. 3:14-cv-00327 (JAM), 2015 WL 737114, at *2 n. 2 (D.

Conn. 2015) (considering evidence submitted on reply in response to unanticipated arguments).

Here, the Reply Documents respond to the evidentiary objections raised by the

Greenwich Parties.  The Reply Statement does not raise new arguments or put forward new

undisputed facts.  The Supplemental Trustee Exhibits attached to the Supplemental Barron

Declaration are authentication declarations relating to certain Trustee Exhibits in response to the

Greenwich Parties' objections.  The Reply Documents were filed thirty-two (32) days before the scheduled hearing on the Motion for Summary Judgment.  In sum, they do not present an unfair surprise to the Greenwich Parties.  Accordingly, the Court will not strike the Reply Documents from the record.

The Court declined to act on the Greenwich Parties' alternative request for permission to file a surreply and for a continuance of the hearing on the Motion for Summary Judgment prior to the hearing.  On this record, the Greenwich Parties do not make the showing of good cause required for filing a surreply.  D. Conn. L. Civ. R. 7(d).  The Motion to Strike was filed two business days before the scheduled hearing on the Motion for Summary Judgment.  It was filed twenty-eight (28) days after the Reply Documents were filed.  Any request for further briefing and a continuance should have been made further in advance of the hearing and closer to the time the Reply Documents were filed.  Moreover, as discussed above, the Reply Documents did not constitute unfair surprise.

Therefore, for the above stated reasons, the Motion to Strike is denied.

### B.  Evidentiary Disputes

Turning to the evidentiary disputes between the parties, the Greenwich Parties raise several evidentiary objections to the Motion for Summary Judgment under Rules 56(c)(2) and (4).  The Trustee also raises objections to the statement of additional material facts in the L.R. 56(a)(2) Statement.

### 1.  Rule 56(c)(4)

Rule 56(c)(4) states "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show

that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Greenwich Parties object to the Barron Declaration on the bases that (i) Attorney Douglass Barron ("Attorney Barron") lacks personal knowledge regarding the Trustee Exhibits; and (ii) the Barron Declaration does not contain a statement that it is sworn under penalty of perjury.  The Trustee argues that the Barron Declaration is not put forward as factual assertions about the content or creation of the Trustee Exhibits.

The Court is not persuaded by the Greenwich Parties' arguments.  Regarding the first argument, the Barron Declaration, as it relates to the majority of Trustee Exhibits,[5] is neither a primary authentication declaration nor a declaration about the factual substance of the Trustee Exhibits.  Instead, it is a declaration that the attached exhibits are true and correct copies of documents the Trustee has received through discovery or otherwise.  Whether Attorney Barron has personal knowledge regarding the creation or content of the Trustee Exhibits does not matter.  That is not the purpose of his declaration.  *See* Fed. R. Evid. 602.

Regarding the second argument, while the Greenwich Parties are correct that the Barron Declaration lacks the sworn statement that its contents are true and correct under the penalty of perjury, the Supplemental Barron Declaration, which includes the content of the Barron Declaration, contains that sworn statement.  *See* 28 U.S.C. § 1746.  Any defect with the Barron Declaration has been cured by the Supplemental Barron Declaration.

Therefore, the Greenwich Parties' Rule 56(c)(4) objection is overruled.

---

[5]  As will be discussed below, the Trustee argues that the Supplemental Barron Declaration authenticates Trustee Exhibit 12.

## 2. Rule 56(c)(2)

Rule 56(c)(2) requires evidence relied upon at summary judgment to be presentable in an admissible form at trial. Fed. R. Civ. P. 56(c)(2). "[M]aterial relied on at summary judgment need not be admissible in the form presented. Rather, so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered on summary judgment." *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order) (citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (per curiam)); *see* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence").

The Greenwich Parties raise several categories of objections to the Trustee Exhibits and the matters of which the Trustee requests the Court take judicial notice. First, they argue the Trustee has failed to authenticate certain Trustee Exhibits. Second, they argue the deposition testimony of Attorney Margaret Conboy ("Attorney Conboy") is subject to attorney-client privilege. Third, they argue the deposition testimony of Attorney Conboy and Mr. Emile de Neree ("Mr. de Neree") is made without personal knowledge of the relevant facts. Fourth, they argue that information relating to Greenwich Land's financial activities is irrelevant. Fifth, they argue that the Individual Debtor's and Ms. Mei Guo's ("Ms. Guo") – the Individual Debtor's and Ms. Ngok's daughter – invocation of their Fifth Amendment rights against self-incrimination is inadmissible at summary judgment. Sixth, they argue that past determinations of this Court in these jointly administered Chapter 11 cases and related adversary proceedings are inadmissible hearsay. The Trustee contests each of these objections.

### i. Authentication

Regarding authentication, the Court agrees with the Trustee.  First, Trustee Exhibits 6, 7, 13 through 16, 23, 28, 30, 33 through 35, 37 through 39, 41 through 45, 53 through 55, 66, and 67 would be authenticated at trial as business records produced in the ordinary course as established by Supplemental Trustee Exhibits 68 through 72, which are the authentication declarations of, respectively, Capital One, NA; Hodgson Russ LLP; Bento Technologies, Inc.; First Bank of Greenwich; and the Bank of Princeton.  Fed. R. Evid. 901(b)(7); *see Off. Comm. of Unsecured Creditors v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 456 (Bankr. S.D.N.Y. 2007) (citing *Conoco, Inc. v. Dep't of Energy*, 99 F.3d 387, 391–92 (Fed. Cir. 1992)).

Second, Trustee Exhibits 13, 14, 16 through 18, 38, 40, 44, 52 through 55, and 67[6] are Greenwich Land's own documents, which it itself has produced and, therefore, would be presented in an admissible form at trial.  "It is disingenuous and wasteful for [a party] to object that its own documents are not authenticated, and thus inadmissible at trial and on summary judgment." *Com. Data Servers, Inc. v. Int'l Bus. Machs. Corp.*, 262 F. Supp. 2d 50, 60 (S.D.N.Y. 2003).  "[T]he fact that [a party] is in the best position to know if they are authentic and that they have never claimed that they are not", as with the Greenwich Parties and the Trustee Exhibits at issue here, establishes authenticity.  *Com. Data Servers*, 262 F. Supp. 2d at 60 (citing Fed. R. Evid. 901(b)(4)).

Third, Trustee Exhibits 9 and 10 are domestic public documents with certifications under seal by public officials and, therefore, would be presented in an admissible form at trial.  No extrinsic evidence is necessary to authenticate them.  Fed. R. Evid. 902(2).

---

[6] Certain Trustee Exhibits are authenticated in more than one manner.  This Memorandum of Decision lists such Trustee Exhibits when setting forth each applicable rationale.

Fourth, Trustee Exhibits 4, 11, and 24 are acknowledged documents. No extrinsic evidence is necessary to authenticate them. Fed. R. Evid. 902(8). Therefore, they would be presented in an admissible form at trial.

Fifth, Trustee Exhibit 12 is a transcript of the Individual Debtor's deposition taken in the adversary proceeding styled *HK International Funds Investments (USA) Ltd. v. Despins (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. June 26, 2023). Attorney Barron was present at the deposition and, hence, has personal knowledge regarding the content of Trustee Exhibit 12. Therefore, the Supplemental Barron Declaration authenticates Trustee Exhibit 12 and it would be presented in an admissible form at trial. Fed. R. Evid. 901(b)(1). *Com. Data Servers*, 262 F. Supp. 2d at 59.

Sixth, Trustee Exhibits 8, 13 through 16, 30, 33 through 35, 37 through 39, 44, 53 through 55, 66, and 67 are bank records, which would be presented in an admissible form at trial. These Trustee Exhibits have the distinctive characteristics of bank records and the present circumstances support their authenticity. Fed. R. Evid. 901(b)(4). The Supplemental Barron Declaration swears under penalty of perjury that they are true and correct copies of documents the Trustee has received through discovery. The Greenwich Parties do not object that any of them are inauthentic, but rather that they are not presently authenticated. Moreover, an authenticating witness for the banks would, as necessary, appear and testify at any trial in this adversary proceeding. Fed. R. Evid. 901(b)(1).

Seventh, Trustee Exhibits 6, 7, 9, 10, 25 through 27, 29, and 45 are corporate records and would be presented in an admissible form at trial. As with the bank records above, these Trustee Exhibits have the distinctive characteristics of corporate records and the present circumstances support their authenticity. Fed. R. Evid. 901(b)(4). As with the bank records, the Supplemental

13

Barron Declaration swears under the penalty of perjury that they are true and correct copies of documents produced in discovery and the Greenwich Parties do not suggest they are inauthentic. Moreover, an authenticating witness for the relevant corporations would, as necessary, appear and testify at any trial in this adversary proceeding. Fed. R. Evid. 901(b)(1). Finally, some of these records are public documents and, therefore, a certified copy could be presented at trial. Fed. R. Evid. 902(2).

Eighth, Trustee Exhibits 8, 15 through 18, 40, 46, 47, and 50 through 52 are contracts and contractual documents, which would be presented in an admissible form at trial. As with the bank and corporate records above, these Trustee Exhibits have the distinctive characteristics of contracts or contractual documents and the present circumstances support their authenticity. Fed. R. Evid. 901(b)(4). Once again, the Supplemental Baron Declaration swears under the penalty of perjury that they are true and correct copies of documents produced in discovery and the Greenwich Parties advance no argument that they are inauthentic. Moreover, an authenticating witness among the parties to the contracts would, as necessary, appear and testify at any trial in this adversary proceeding. Fed. R. Evid. 901(b)(1).

Ninth, Trustee Exhibits 4, 11, and 24 are court filings, which would be presented in an admissible form at trial. The Court may take judicial notice of these documents.

Tenth and finally, Trustee Exhibit 22 is a declaration of the Individual Debtor prepared in connection with a consent order entered into in his Chapter 11 case regarding his invocation of his Fifth Amendment rights against self-incrimination and, therefore, would be presented in an admissible form at trial. It has the distinctive characteristics of a declaration and the present circumstances supports its authenticity. Fed. R. Evid. 901(b)(4).

Therefore, for all these reasons, the Greenwich Parties' objections regarding the authenticity of various Trustee Exhibits are all overruled for the purposes of the Motion for Summary Judgment.

### ii.  Attorney Client Privilege

The Greenwich Parties argue the deposition testimony of Attorney Conboy should be excluded as subject to Greenwich Land's attorney-client privilege.  The Trustee argues this objection fails for two reasons: first, the communications discussed in Attorney Conboy's deposition testimony were conversations involving Hudson Diamond NY LLC ("HDNY"), Golden Spring (New York) Limited ("Golden Spring"), and Greenwich Land; and second, the deposition testimony has been on the public docket for about a year.

The Court agrees with the Trustee.  "[A]s with all privileges, the person claiming the attorney client privilege has the burden of establishing all essential elements."  *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973) (citing *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir. 1961)). "The party asserting the privilege . . . bears the burden of establishing" that the communications to be protected are "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011); *see Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519 (S.D.N.Y. 2001) (citing *United States v. Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)).  "A party seeking the protections of the attorney-client privilege must affirmatively act to protect her communications."  *Niceforo v. UBS Glob. Asset Agmt. Ams., Inc.*, 20 F. Supp. 3d 428, 437 (S.D.N.Y. 2014).

The Greenwich Parties cite to no testimony regarding communications with Greenwich Land, let alone communications that were intended to be confidential or were for the purposes of

15

obtaining or providing legal advice.  Rather, the Greenwich Parties cite to testimony that Greenwich Land was Attorney Conboy's client.  The Greenwich Parties do not meet their burden of establishing the attorney-client privilege protects the communications discussed by Attorney Conboy in her deposition testimony.  *See Mejia*, 655 F.3d at 132.  Moreover, the Trustee is correct that Attorney Conboy represented multiple parties in connection with the purchase and sale of the Ferncliff Property, including Greenwich Land, Golden Spring, and HDNY.  She testified as to communications with those other entities, with and without the presence of Greenwich Land.  The Greenwich Parties advance no argument as to why sharing communications with Golden Spring and HDNY does not defeat their assertion of privilege.  It is their burden to do so.  *United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir. 1989); *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 71–72 (S.D.N.Y. 2009).  Moreover, Golden Spring has been adjudged to be the Individual Debtor's *alter ego* and, therefore, its privilege has passed to the Trustee.  (Consent Order Regarding Control of Attorney-Client Privilege, Main Case ECF No. 856.)

For these reasons, the Court overrules the Greenwich Parties' objection to the admissibility of Attorney Conboy's testimony at trial on the basis of attorney-client privilege.

### iii.  Personal Knowledge

The Greenwich Parties argue Attorney Conboy and Mr. de Neree's deposition testimony is largely inadmissible because they lack personal knowledge about the ownership of Greenwich Land, the Individual Debtor's record relationship to Greenwich Land, internal deliberations of Greenwich Land, and the source of the funds used to purchase the Ferncliff and Taconic Properties.  The Trustee argues the Greenwich Parties misconstrue the purpose for which the

testimony of Attorney Conboy and Mr. de Neree is put forward and that they have the relevant personal knowledge.

The Court agrees with the Trustee.  "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."  Fed. R. Evid. 602.  The Trustee puts forward Attorney Conboy and Mr. de Neree's testimony as direct evidence of the Individual Debtor's alleged use and control of Greenwich Land in relation to the purchases of the Ferncliff and Taconic Properties and the sale of the Ferncliff Property.  The Trustee does not put forward the deposition testimony as evidence the Individual Debtor – or any other person – was a record member or officer of Greenwich Land or as evidence as to the source of the funds used to purchase the Ferncliff and Taconic Properties.  (*See* L.R. 56(a)(1) Statement ¶¶ 23, 28.)

Therefore, the Greenwich Parties' objection that the testimony of Attorney Conboy and Mr. de Neree would be inadmissible at trial due to lack of personal knowledge is overruled.

### iv.  Relevance

The Greenwich Parties argue much of the Trustee's evidence is irrelevant because it does not tend to establish who was a record member or officer of Greenwich Land or relate to the ownership and use of the Ferncliff and Taconic Properties.  The Trustee argues the Trustee Exhibits tend to establish the Individual Debtor's dominion and control over Greenwich Land and its assets – whether or not the Individual Debtor is a record member or officer of Greenwich Land and whether or not his alleged use of Greenwich Land is in keeping with its stated purpose of owning property in Greenwich, Connecticut – as well as Greenwich Land's role in a scheme to unjustly keep assets away from his creditors.

17

In the Complaint, the Trustee alleges, among other things, (i) Greenwich Land is a façade whose corporate form was abused such that it shares its economic identity with the Individual Debtor and (ii) the Individual Debtor owns Greenwich Land despite not being its record owner. In stating the undisputed facts below, the Court has determined the Trustee Exhibits cited are relevant because they have a "tendency to make a fact more or less probable than it would be without the evidence" and the fact in question "is of consequence in determining the action" because the cited exhibits relate to, among other things, the Individual Debtor's use and control of Greenwich Land.  Fed. R. Evid. 401.  The Court has undertaken an analysis of the Trustee Exhibits and determined that the probative value of the evidence in question is not substantially outweighed by any counterbalance considered by courts.  Fed. R. Evid. 403.

Therefore, the cited Trustee Exhibits would be admissible at trial.  Fed. R. Evid. 402.

### v.  Admissibility of Invocation of Fifth Amendment

The Greenwich Parties argue an invocation of Fifth Amendment rights against self-incrimination cannot be a basis of an adverse inference at summary judgment.  To highlight the lack of any genuine dispute of material fact about certain issues, the Trustee argues the Individual Debtor's and Ms. Guo's invocations of their Fifth Amendment rights against self-incrimination are relevant, juxtaposed against Ms. Ngok's, Ms. Conboy's, and Mr. de Neree's testimony.

The Court agrees with the Trustee.  The Greenwich Parties are correct that an adverse inference on the basis of an invocation of Fifth Amendment rights against self-incrimination is improper at summary judgment.  *Stichting ter Behartiging van de Belangen van Oudaandeelhouders in het Kapitaal van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005).  However, the Individual Debtor's and Ms. Guo's invocation of the Fifth Amendment has

18

limited relevance insofar as it establishes they do not dispute the testimony of Ms. Ngok, Ms. Conboy, and Mr. de Neree.  Given this matter is before a court, not a jury, and the Court's awareness that an adverse inference is impermissible at summary judgment, the relevance of the Individual Debtor's and Ms. Guo's invocation of their Fifth Amendment rights against self-incrimination is not outweighed by prejudice to the Greenwich Parties.  Fed. R. Evid. 401–03.

Therefore, the Court will consider this evidence and give it appropriate weight.  The Greenwich Parties' objection is overruled.

### vi.  Judicial Notice and Law of the Case

The Greenwich Parties argue the Trustee seeks to apply *res judicata* to preclude them from rearguing claims and issues previously litigated in these jointly administered Chapter 11 cases and related adversary proceedings.  The Trustee argues he is not trying to preclude the Greenwich Parties from putting forth evidence contradicting such rulings and that the rulings are admissible, supplemental evidence that supports summary judgment.

The Court agrees with the Trustee.  *Res judicata* – whether claim or issue preclusion – operates to preclude or estop a party from litigating certain claims or issues.  *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) ("Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.  Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.").  Here, the Trustee has not sought to preclude the Greenwich Parties from litigating whether certain entities and persons are associated

19

with the Individual Debtor.  More importantly, the Court has not estopped or precluded the

Greenwich Parties from presenting evidence disputing these issues.

Distinct from *res judicata*, it is within the Court's discretion whether prior determinations

in these jointly administered Chapter 11 cases and related adversary proceedings constitute law

of the case.  *Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, 567 B.R. 247, 254 (Bankr.

S.D.N.Y. 2017) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983); *De Johnson v. Holder*,

564 F.3d 95, 99 (2d Cir. 2009); *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir.

2001)), *aff'd sub nom. Krakowski v. Allied Pilots Ass'n (In re AMR Corp.)*, 834 F. App'x 660 (2d

Cir. 2021), *cert. denied*, *Krakowski v. Allied Pilots Ass'n*, 142 S. Ct. 347 (2021).  "Unlike the

more precise requirements of res judicata, law of the case is an amorphous concept.  As most

commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision

should continue to govern the same issues in subsequent stages in the same case," although the

doctrine does not prevent a court from revisiting its prior determinations or allowing renewed

argument on an issue.  *Arizona*, 460 U.S. at 618.  Unlike *res judicata*, it is not essential to law of

the case that the parties before the court were involved in the previous litigation.  *In re Motors*

*Liquidation*, 590 B.R. 39, 62, 66–68 (S.D.N.Y. 2018), *aff'd sub nom. Reichwaldt v. General*

*Motors LLC (In re Motors Liquidation)*, 792 F. App'x 28 (2d Cir. 2019); *but see Westerbeke*

*Corp. v. Daihatsu Moto Co., Ltd.*, 304 F.3d 200, 218–19 (2d Cir. 2002) (holding that, under New

York as opposed to federal law, law of the case requires the parties participated in the previous

litigation).

Finally, the Court may also take judicial notice of case filings and the determinations of

the Court in these jointly administered Chapter 11 cases and related adversary proceedings, if not

for the truth of the matters asserted, for the fact that such filings, findings, and rulings were

made. *AMR Corp.*, 567 B.R. at 250. Similarly, the Court may take judicial notice of filings in other cases and determinations made by other courts for this same purpose. *Liberty Mutual Ins. Co. v. Rotches Pork Packer, Inc.*, 969 F.2d 1384, 1388–89 (2d Cir. 1992); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 605–06, 606 n. 1560 (S.D.N.Y. 2014), *aff'd by* 833 F.3d 74 (2d Cir. 2016).

Here, for the most part, the Trustee requests the Court take judicial notice of certain court filings in other courts and in these jointly administered Chapter 11 cases and related adversary proceedings. The Greenwich Parties do not object to this request.

The Trustee also requests, however, that the Court acknowledge, for the truth of the matter asserted, its prior determinations that Golden Spring and HK International Funds Investments (USA) Limited, LLC ("HK USA") are *alter egos* of the Individual Debtor and that Saraca Media Group, Inc. ("Saraca") is related to the Individual Debtor's media ventures. While the Greenwich Parties object to having these rulings be determined law of the case, the Greenwich Parties advance no evidence to dispute the relevant proposed undisputed, material facts. Instead, they suggest more discovery needs to be undertaken on these issues. However, the Greenwich Parties have had their opportunity to undertake such discovery. Pursuant to the Pretrial Order, fact discovery closed on September 15, 2023 in this adversary proceeding. No additional discovery could be taken in this adversary proceeding absent further order of the Court. The time for the Greenwich Parties to dispute the Court's prior rulings was in their responsive pleadings to the Motion for Summary Judgment.

Therefore, given the lack of any evidence to the contrary, the Court, within its discretion, determines that these matters are law of the case, for the purposes of the Motion for Summary Judgment, to the extent set forth below in the statement of undisputed facts.

### 3.  The Trustee's Objections to the L.R. 56(a)(2) Statement

Turning to the Trustee's objections to the L.R. 56(a)(2) Statement, the Trustee raises

three categories of objections.  First, he objects to the Greenwich Parties' reliance on Ms. Ngok's

Rule 2004 deposition testimony insofar as that testimony contradicts her testimony in this

adversary proceeding.  Second, he raises various relevancy objections to the proposed additional

material facts.  Third, he objects that numerous proposed additional facts are unsupported by

their D. Conn. L. Civ. R. 56(a)(3) citations to the record and exhibits.

Regarding the Trustee's first objection, he argues the Greenwich Parties cannot rely on

Ms. Ngok's Rule 2004 testimony that Mr. Qiang Guo ("Mr. Guo") – Ms. Ngok's and the

Individual Debtor's son – created Greenwich Land and bought the Ferncliff and Taconic

Properties for Ms. Ngok.  He asserts the Greenwich Parties cannot rely on this testimony because

(a) in her testimony during the deposition of her and Greenwich Land in this adversary

proceeding, Ms. Ngok testified she did not know the source of the funds used to purchase the

Ferncliff and Taconic Properties, which answer accords with the Greenwich Parties' answers to

interrogatories; and (b) the Greenwich Parties did not disclose Mr. Guo as a party with relevant

knowledge about the matter of this adversary proceeding.  The Trustee contends Ms. Ngok seeks

to perjure herself to prevent summary judgment.  The Greenwich Parties dispute the Trustee's

contention that Ms. Ngok seeks to perjure herself and argue that Ms. Ngok's testimony during

her Rule 2004 deposition creates a genuine dispute of material fact.

The Court agrees with the Trustee.  The Greenwich Parties cannot defeat summary

judgment by contradicting their sworn statements and admissions as well as positions taken in

this adversary proceeding.  *See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925

F.2d 566, 572–73 (2d Cir. 1991).  Ms. Ngok, in her individual capacity and in her capacity as the

Rule 30(b)(6) corporate representative of Greenwich Land, testified at her deposition taken in this adversary proceeding that (a) she did not know the source of the funds used to purchase the Ferncliff and Taconic Properties; (b) she did not know why the entities that transferred the funds did so; and (c) she did not know who would know why the entities transferred the funds. (*Compare* Tr. Ex. 21, at *35:5–7, 52:21–25, 55:4–16, 83:1–11 *with* Tr. Ex. 20, at *21:8–22:17, 29:11–24.)  Ms. Ngok testified she asked her son, Mr. Guo, to help sell the Ferncliff Property but otherwise did not mention him during her deposition taken in this adversary proceeding.  (Tr. Ex. 21, at *92:17–22.)  Similarly, in the Greenwich Parties' responses to interrogatories, they averred they had no knowledge of the source of funds used to purchase the Ferncliff and Taconic Properties.  (Tr. Ex. 3, Response Nos. 1–2, 4–5.)  Furthermore, the Greenwich Parties do not dispute that they failed to include Mr. Guo among their initial disclosures as a person with relevant knowledge.  Finally, the Greenwich Parties do not proffer any evidence in support of the proposed additional material fact that Mr. Guo purchased the Ferncliff and Taconic Properties for his mother, Ms. Ngok, other than Ms. Ngok's Rule 2004 deposition testimony.

The record in this adversary proceeding makes clear that the Greenwich Parties abandoned Ms. Ngok's prior Rule 2004 testimony that her son purchased the Ferncliff and Taconic Properties.  The Greenwich Parties cannot revive that testimony at the eleventh hour, after discovery has closed, in order to prevent summary judgment.  *See Trans-Orient*, 925 F.2d at 572–73.  Therefore, the Court will not consider Ms. Ngok's prior testimony regarding her son in determining the undisputed material facts for the purposes of summary judgment.  The Court will not reach the allegations of perjury.

Regarding the Trustee's relevancy objections, the Court sustains some and overrules others as indicated by the statement of undisputed facts below.  For example, the Court overrules

the Trustee's objections to certain additional material facts regarding Ms. Ngok's record ownership of Greenwich Land and her use of the Taconic Property, although the Greenwich Parties' presentation of these facts is needlessly cumulative and not reflected below.  As a contrary example, the Court sustains the Trustee's objections to several proposed additional facts regarding Mr. de Neree's knowledge of Mandarin Chinese.  These additional facts seem intended to show that Mr. de Neree was not privy to the conversations between Ms. Ngok and her children when they visited the Taconic Property.  However, the Greenwich Parties do not put forward any evidence on the substance or importance of those conversations.  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks*, 593 F.3d at 166 (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).  Accordingly, the Court will not speculate as to the content of those conversations at summary judgment and the proposed additional facts on this issue are, therefore, irrelevant.  Beyond these examples, the Court makes other rulings on the Trustee's relevancy objections as indicated by the statement of undisputed facts below.

Regarding the Trustee's D. Conn. L. Civ. R. 56(a)(3) objections, upon review of the Trustee and Greenwich Exhibits and the citations thereto, the Court has, made its determinations as indicated by the statement of undisputed facts below.

### C.  Statement of Undisputed Facts[7]

Upon review of: (i) the Statements;(ii) the Barron Declaration, the Supplemental Barron Declaration, and Major Declaration together with the attached Trustee Exhibits, Supplemental

---

[7]  This statement of undisputed facts is largely derived from the L.R. 56(a)(1) Statement, upon review of the citations to the Trustee Exhibits, the objections raised and additional facts stated in the L.R. 56(a)(2) Statement, and the Reply Statement.  The Court has also drawn on the proposed additional material facts in the L.R. 56(a)(2) Statement.  However, as discussed above, many of the proposed additional material facts set forth in the L.R. 56(a)(2) Statement are repetitive, irrelevant, or unsupported by citations to evidence.

Trustee Exhibits, and Greenwich Exhibits, including for their relevance and the inclusion of citations to supporting evidence; and (iii) the record of this adversary proceeding, the jointly administered Chapter 11 cases, and related adversary proceedings, including for its relevance, the Court, having above ruled on the Motion to Strike and the evidentiary disputes between the parties; and unsealing material to the extent necessary to issue this Opinion and warranted under section 107 of the Bankruptcy Code and precedent of the United States Court of Appeals for the Second Circuit,[8] states the following undisputed facts for the purposes of the Motion for Summary Judgment:

### *Greenwich Land and Its Corporate Form, Ownership, Officers, and Place of Business*

1.  Greenwich Land is a Delaware limited liability company.  (Tr. Ex. 1.)

2.  Ms. Ngok is the sole member of Greenwich Land.  (Tr. Ex. 2.)

3.  The limited liability company agreement states Ms. Ngok, as sole member, has certain powers and authority regarding Greenwich Land.  (Tr. Ex. 2 ¶ 6.)

4.  Ms. Ngok, Ms. Yanping "Yvette" Wang ("Ms. Wang"), Mr. Max Krasner ("Mr. Krasner"), and Mr. Daniel Podhaskie ("Mr. Podhaskie") have, at times, served as officers of

---

[8]  Upon performing a particularized review of documents submitted in support of and in opposition to the Motion for Summary Judgment, pursuant to the balancing test propounded by the United States Court of Appeals for the Second Circuit in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), the Court determines, to the extent necessary to publish this unredacted Opinion, (i) the performance of the judicial function requires the unsealing of the material previously sealed by orders (the "Sealing Orders") of the Court (*see* ECF Nos. 87, 88, 119); and (ii) the strong presumption of public access to the material submitted at summary judgment is not rebutted by the privacy and commercial information interests in maintaining the sealing of the material, *Maxwell*, 929 F.3d at 47; *see* 11 U.S.C. § 107; *United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995); *In re Purdue Pharma*, 632 B.R. 34 (Bankr. S.D.N.Y. 2021).  Moreover, the parties have agreed that the content of the Statements may be unsealed and publicly filed.  (Jan. 9, 2024 Hr'g Tr. at 70:7–77:15, ECF No. 127.)  Therefore, such materials are unsealed to such extent.  Except as provided herein, the Sealing Orders remain in full force and effect until further order of the Court.

Greenwich Land.  Greenwich Land has had no other officers.  Presently, only Ms. Ngok is an officer of Greenwich Land.

5.    During a Rule 2004 deposition of Ms. Ngok in her individual capacity taken in the Individual Debtor's Chapter 11 case on January 5, 2023 (the "January 2023 Ngok Deposition"), she testified:

> a.  she does not know the name of anyone who is or has ever been an officer of Greenwich Land (Tr. Ex. 20, at *47:12–48:1, 78:14–21);
>
> b.  she has never had any interaction with Ms. Wang in connection with Greenwich Land and she did not know whether Ms. Wang was an officer or employee of Greenwich Land (Tr. Ex. 20, at *47:1–11);
>
> c.  she is not familiar with Mr. Podhaskie, and she "do[es]n't know this person" (Tr. Ex. 20, at *51:13–15, 85:1–4); and
>
> d.  she is "not familiar" with Mr. Krasner (Tr. Ex. *20, at 45:17–18).

6.    During a deposition of Ms. Ngok in her individual capacity and in her capacity as the Rule 30(b)(6) corporate representative of Greenwich Land taken in this adversary proceeding on September 11, 2023 (the "September 2023 Ngok Deposition"), she testified Mr. Krasner "has nothing to do with [her], and [she has] no relationship with him whatsoever."  (Tr. Ex. 21, at *164:21–165:5.)

7.    Ms. Wang, Mr. Krasner, and Mr. Podhaskie each opened bank accounts on behalf of Greenwich Land.  (Tr. Exs. 13–16; Supp. Tr. Exs. 68 ¶¶ 35, 50, 71 ¶ 6, 72 ¶ 19.)

8.    On behalf of Greenwich Land, Mr. Krasner executed sale agreements and other closing documents related to the purchases of the Ferncliff and Taconic Properties and the sale of the Ferncliff Property.  (Tr. Exs. 17, 18, 52.)

9. On behalf of Greenwich Land, Golden Spring, and HDNY, Mr. Krasner communicated with Attorney Conboy regarding real estate matters. (Tr. Ex. 19, at *18:13–22:17.)

10. Ms. Wang, Mr. Krasner, and Mr. Podhaskie have occupied positions at entities allegedly controlled by the Individual Debtor, including the Individual Debtor's adjudged *alter ego*, Golden Spring. (Tr. Exs. 4 ¶ 1, 6–10, 11 ¶ 9a, 64; Supp. Tr. Ex. 69 ¶¶ 8, 9.)

11. During a deposition in another adversary proceeding related to the Individual Debtor's Chapter 11 case taken on March 2, 2023 (the "March 2023 Kwok Deposition"), the Individual Debtor invoked his Fifth Amendment rights against self-incrimination regarding whether Ms. Wang, Mr. Krasner, and Mr. Podhaskie were his employees and/or agents. (Tr. Ex. 12, at *33:11–24, 34:7–20, 86:11–87:5.)

12. In a sworn declaration dated May 11, 2023 (the "May 2023 Kwok Declaration"), the Individual Debtor invoked his Fifth Amendment rights against self-incrimination regarding whether he has control over Ms. Wang, Mr. Krasner, and Mr. Podhaskie. (Tr. Ex. 22 ¶¶ 2, 36, 46.)

13. Greenwich Land has maintained an address at 162 East 64th Street, New York, New York (the "64th Street Address"). (*See, e.g.*, Tr. Ex. 23; Supp. Tr. Ex. 69 ¶ 10.)

14. The 64th Street Address has been used by, among others:

   a. the Individual Debtor (Main Case ECF No. 1);

   b. the Individual Debtor's *alter ego* Golden Spring (Main Case ECF No. 1; Order Granting Motion for Default Judgment, *Despins ex rel. Kwok v. Golden Spring (New York) LTD (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05018 (JAM) (Bankr. D. Conn. Dec. 4, 2023), ECF No. 35);

   c. the Individual Debtor's *alter ego* HK USA (Tr. Ex. 25; Memorandum of Decision and Order Granting Motion for Summary Judgment, *HK Int'l Funds Invs.*

*(USA) Ltd. v. Despins ex rel. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. May 18, 2023), ECF No. 221);

    d.  HDNY (Tr. Ex. 28; Supp. Tr. Ex. 69 ¶ 11);

    e.  other entities associated with the Individual Debtor, *e.g.*, GTV Media Group, Inc., Saraca, Hudson Diamond Holding LLC ("HD Holding"), and the Rule of Law Foundation (Tr. Exs. 26–29; Supp. Tr. Ex. 69 ¶ 11; Corrected Memorandum of Decision Granting in Part Motion for Preliminary Injunction (the "PI Decision") ¶¶ 3, 7, *Pac. All. Asia Opportunity Fund LP v. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05032 (JAM) (Bankr. D. Conn. Jan. 13, 2023), ECF No. 133); and

    f.  Attorney Aaron Mitchell, who represents the Individual Debtor in, among other matters, his Chapter 11 case (Tr. Ex. 24).

15.  During the March 2023 Kwok Deposition, the Individual Debtor asserted his Fifth Amendment rights against self-incrimination regarding whether he beneficially owns Greenwich Land.  (Tr. Ex. 12, at *96:17–20.)

16.  In the May 2023 Kwok Declaration, the Individual Debtor asserted his Fifth Amendment rights against self-incrimination regarding whether he controls Greenwich Land. (Tr. Ex. 22 ¶ 126.)

### *Greenwich Land's Financial Activity*

17.  In the Greenwich Parties' supplemental responses to interrogatories (the "Supplemental Responses"), the Greenwich Parties admit:

    a.  Ms. Ngok "did not directly participate in real estate transactions or any banking or other financial transactions of Greenwich Land" (Tr. Ex. 3 Response No. 1; *see also* Tr. Ex. 3 Response Nos. 2, 5); and

    b.  Ms. Ngok "does not know the source of the funds in [Greenwich Land's] bank accounts" (Tr. Ex. 3 Response No. 2)

18.  During the September 2023 Ngok Deposition, Ms. Ngok testified:

    a.  she does not know at which banks Greenwich Land has or had bank accounts (Tr. Ex. 21, at *28:8–14); and

b.  she does not know who has or had the right to spend money from Greenwich Land bank accounts (Tr. Ex. 21, at *28:23–29:11).

### (i) Greenwich Land's Bento Account

19.  In or around October 2020, Greenwich Land opened a Bento for Business ("Bento") bank account.  (Tr. Ex. 30, at *HWK-Bento:000497–98; Supp. Tr. Ex. 70 ¶¶ 5–39.)

20.  During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know what Bento is.  (Tr. Ex. 21, at *113:1–3.)

21.  Ms. Ngok, Mr. Krasner, Ms. Guo – the Individual Debtor's and Ms. Ngok's daughter, Mr. Chunguang Han ("Mr. Han") – the family chef (*see* Tr. Ex. 21, at *142:12–144:8), and Mr. Podhaskie used debit cards in their names under Greenwich Land's Bento account, and each spent funds in Greenwich Land's Bento account as follows:

| Cardholder | Ms. Ngok | Mr. Krasner | Mr. Podhaskie | Ms. Guo | Mr. Han | Total |
|---|---|---|---|---|---|---|
| **Spending 10/26/2020– 7/31/2023** | $718,978.56 <br> 2,788 debit transactions | $358,879.29 <br> 294 debit transactions | $1,739.46 <br> 2 debit transactions | $321,893.24 <br> 1,349 debit transactions | $129,191.77 <br> 386 debit transactions | $1,530,682.32 <br> 4,819 debit transactions |

(Tr. Ex. 30 at *HWK-Bento:000499–701; Supp. Tr. Ex. 70 ¶¶ 5–39.)

22.  Ms. Guo and Mr. Han were never officers or employees of Greenwich Land.  They never held any role at Greenwich Land.

23.  During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know why Ms. Guo, her daughter, and Mr. Han, the family chef, were issued cards for the Greenwich Land Bento account despite not being employees, officers, directors, managers, or members of Greenwich Land.  (Tr. Ex. 21, at *150:23–51:6.)

24.  On November 5, 2022, Mr. Krasner resigned from his position as Vice President of Greenwich Land.  (Tr. Ex. 32, at *2.)

25.  After November 5, 2022, Mr. Krasner, using a debit card associated with Greenwich Land's Bento account, or, another individual using the same Bento debit card, spent at least $62,823.13, including without limitation:

a.  on January 27, 2023, more than $18,000.00 on Hermès goods or services (Tr. Ex. 30, at *HWK-Bento: 000668; Supp. Tr. Ex. 70 ¶¶ 5–39);

b.  between November 17, 2022 and February 17, 2023, more than $8,400.00 on Paul Miller GT-Inc. Bentley goods or services (Tr. Ex. 30, at *HWK-Bento: 000646, 000672; Supp. Tr. Ex. 70 ¶¶ 5–39);

c.  on January 18, 2023, more than $5,900.00 on Barclay Rex goods or services (Tr. Ex. 30, at *HWK-Bento: 000667; Supp. Tr. Ex. 70 ¶¶ 5–39);

d.  on February 27, 2023, more than $3,800.00 on Prada USA goods and services (Tr. Ex. 30, at *HWK-Bento: 000676; Supp. Tr. Ex. 70 ¶¶ 5–39);

e.  on December 12, 2022, more than $1,300.00 on Lois Vuitton goods or services (Tr. Ex. 30, at *HWK-Bento: 000655; Supp. Tr. Ex. 70 ¶¶ 5–39); and

f.  between November 17, 2022 and February 24, 2023, more than $8,400.00 at Harry Cipriani, a restaurant located inside the Sherry-Netherland Hotel, wherein the Individual Debtor has resided in an apartment owned by Genever Holdings LLC, which corporate entity's Chapter 11 case is jointly administered with the Individual Debtor's Chapter 11 case (Tr. Ex. 30, at *HWK-Bento: 000647, 000650–51, 000666–68, 000670–72, 000674; Supp. Tr. Ex. 70 ¶¶ 5–39).

(Tr. Ex. 30, at *HWK-Bento: 000643–92; Supp. Tr. Ex. 70 ¶¶ 5–39.)

26.  During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know why Mr. Krasner spent money from Greenwich Land's Bento account after he resigned from his position with Greenwich Land.  (Tr. Ex. 21, at *161:9–162:1, 163:9–23, 163:25–164:12.)

27.  On March 28, 2023, the Court, for the reasons stated therein, entered the TRO, enjoining the Greenwich Parties from, among other things, transferring and dissipating any property and/or assets of Greenwich Land.  (ECF No. 14.)

28.   On May 26, 2023, the Court entered the Consensual PI, enjoining the Greenwich Parties from, among other things, transferring and dissipating any property and/or assets of Greenwich Land.  (ECF No. 53.)

29.   Between March 28, 2023 and July 31, 2023, persons with access to Greenwich Land's Bento bank accounts spent more than $34,300.00 of Greenwich Land's funds.  (Tr. Ex. 30, at *HWK-Bento: 000682, 000691, 000695, 000699, 000702; Supp. Tr. Ex. 70 ¶¶ 5–39.)

### (ii) Greenwich Land's Bank of Princeton Account

30.   In September 2020, Greenwich Land opened an account at The Bank of Princeton ("BP").  (Tr. Ex. 15; Supp. Tr. Ex. 72 ¶ 19.)

31.   On October 15, 2020, Greenwich Land's BP account received a transfer of $5,000,000.00 from Savio Law LLC ("Savio Law").  (Tr. Ex. 35; Supp. Tr. Ex. 72 ¶ 11.)

32.   On October 21 and 23, 2020, Greenwich Land's BP account received transfers of $999,893.22 and $3,999,915.00, respectively, from ACA Capital Group Ltd. ("ACA Capital"). (Tr. Ex. 35; Supp. Tr. Ex. 72 ¶ 11.)

33.   During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know why, in October 2020, Greenwich Land received in its BP account approximately $10,000,000.00, in aggregate, from Savio Law and ACA Capital.  (Tr. Ex. 21, at *174:22–175:3.)

34.   During the March 2023 Kwok Deposition, the Individual Debtor asserted his Fifth Amendment rights against self-incrimination regarding whether he is the beneficial owner of and/or holds exclusive control over ACA Capital.  (Tr. Ex. 12, at *72:23–73:11.)

35.   In the May 2023 Kwok Declaration, the Individual Debtor asserted his Fifth Amendment rights regarding whether he has control over ACA Capital.  (Tr. Ex. 22 ¶ 62.)

36.   On October 26, 2020 and November 12, 2020, Greenwich Land transferred, respectively, $32,220.00 and $38,500.00 from its BP account to Sherry-Lehman Inc.  (Tr. Ex. 33, 35; Supp. Tr. Ex. 72 ¶ 11.)

37.   On both November 3, 2020 and December 16, 2020, Greenwich Land transferred $50,000.00 from its BP account to its Bento account.  (Tr. Exs. 30, at *HWK-Bento: 000499, 000503, 33, 38; Supp. Tr. Exs. 70 ¶¶ 5–39, 72 ¶¶ 15, 18.)

38.   On November 12, 2020, Greenwich Land transferred $200,000.00 from its BP account to an account at First County Bank held in the name of Ms. Ngok.  (Tr. Exs. 33, 37; Supp. Tr. Ex. 72 ¶¶ 13, 15.)

39.   On November 20, 2020, Greenwich Land transferred $9,000,000.00 from its BP account to the BP account held in the name of Lamp Capital LLC ("Lamp Capital").  (Tr. Exs. 33, 34; Supp. Tr. Ex. 72 ¶¶ 15, 21.)

40.   During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know why, in November 2020, Greenwich Land transferred $9,000,000.00 to Lamp Capital (Tr. Ex. 21, at *173:21–25, 174:3–11), and who authorized the transfer from Greenwich Land to Lamp Capital (Tr. Ex. 21, at *175:5–8).

41.   On December 18, 2020, Greenwich Land transferred $628,863.22 from its BP account to its bank account at Capital One Bank ("Capital One").  (Tr. Ex. 38, 39; Supp. Tr. Ex. 72 ¶¶ 17, 18.)

42.   On December 21, 2020, the Greenwich Land BP account was closed.  (Tr. Ex. 15; Supp. Tr. Ex. 72 ¶ 19.)

***Greenwich Land's Real Estate Transactions***

43.   In the Supplemental Responses, the Greenwich Parties admit:

a.  Ms. Ngok "did not directly participate in real estate transactions or any banking or other financial transactions of Greenwich Land" (Tr. Ex. 3 Response No. 1; *see also* Tr. Ex. 3 Response Nos. 2, 5); and

b.  Ms. Ngok "does not know the source of funds used to purchase [the Ferncliff and Taconic Properties]" (Tr. Ex. 3 Response No. 4).

### (i) Purchase of the Ferncliff Property

44.  Greenwich Land purchased and later sold the real property and fixtures located at 33 Ferncliff Road, Cos Cob, Connecticut 06807, above defined as the "Ferncliff Property".

45.  During the January 2023 Ngok Deposition, Ms. Ngok was shown a picture of the Ferncliff Property and did not recognize it.  (Tr. Ex. 20, at *134:12–20.)

46.  The purchase of the Ferncliff Property was funded as follows:

a.  on August 16, 2019, HDNY transferred $1,500,000.00 from its Capital One account to Greenwich Land's Capital one account (Tr. Exs. 43, 44; Supp. Tr. Ex. 68 ¶¶ 18, 49);

b.  on August 19, 2019, Greenwich Land transferred $137,000.00 from its Capital One account to the custodial account of Greenwich Land's counsel, Whitman Breed Abbot & Morgan ("Whitman Breed"), which amount corresponded to the down payment on the Ferncliff Property (Tr. Exs. 17, at *GREE000195, 44; Supp. Tr. Ex. 68 ¶ 18); and

c.  on August 27, 2019, Greenwich Land transferred another $1,244,373.29 from its Capital One account to Whitman Breed's custodial account, which amount corresponded to the remainder of the purchase price for the Ferncliff Property and associated expenses (Tr. Exs. 17, at *GREE000195–96, 44; Supp. Tr. Ex. 68 ¶ 18).

47.  During the September 2023 Ngok Deposition, Ms. Ngok testified:

a.  she has never heard of HDNY (Tr. Ex. 21, at *35:5–7);

b.  she did not know why, on August 16, 2019, HDNY transferred $1,500,000.00 to Greenwich Land (Tr. Ex. 21, at *55:4–8); and

c.  she does not remember whether she asked HDNY to transfer $1,500,000.00 to Greenwich Land (Tr. Ex. 21, at *52:21–25).

48. During the March 2023 Kwok Deposition, the Individual Debtor asserted his Fifth Amendment rights against self-incrimination regarding whether he owned and/or controlled HDNY. (Tr. Ex. 12, at *49:15–50:7.)

49. Ms. Guo – the daughter of the Individual Debtor and Ms. Ngok – is the indirect record owner of HDNY through her record ownership of HD Holding. (Tr. Exs. 7, 41; Supp. Tr. Ex. 69 ¶¶ 6, 9.)

50. Ms. Wang, Mr. Krasner, and Mr. Podhaskie are or were authorized signatories of HDNY. (Tr. Exs. 7, 42; Supp. Tr. Ex. 69 ¶¶ 9, 12.)

51. During a deposition of Ms. Guo taken in this adversary proceeding on September 13, 2023 (the "September 2023 Guo Deposition"), she asserted her Fifth Amendment rights against self-incrimination regarding whether the Individual Debtor owned and controlled HDNY and directed transfers of its money to Greenwich Land. (Tr. Ex. 31, at *40:17–44:17, 68:13–21, 74:15–75:20.)

52. During the September 2023 Guo Deposition, Ms. Guo invoked her Fifth Amendment rights against self-incrimination regarding whether her father, the Individual Debtor, directed the transfer of approximately $1,500,000.00 from HDNY to Greenwich Land for the purchase of the Ferncliff Property. (Tr. Ex. 31, at *65:12–21, 67:6–25, 69:24–70:5.)

53. Attorney Conboy is a partner at Whitman Breed, the law firm that represented Greenwich Land, Golden Spring, and HDNY, as local counsel, with respect to the purchase and sale of the Ferncliff Property and other matters related to Connecticut real estate, except the purchase of the Taconic Property. (Tr. Ex. 19, at *18:13–22:13.)

54. During deposition in this adversary proceeding taken on September 12, 2023 (the "September 2023 Conboy Deposition"), Attorney Conboy testified:

34

    a.  she referred to the Individual Debtor as her client (Tr. Exs. 19, at *33:12–23, 33:25–34:4, 37:13–38:1, 61, 62);

    b.  she received instructions from Mr. Krasner (Tr. Ex. 19, at *22:14–17, 51:16–25, 66:22–25);

    c.  she never communicated with Ms. Ngok (Tr. Ex. 19, at *22:19–22); and

    d.  she was advised on multiple occasions that the Individual Debtor was making decisions, including as to (i) the acceptance of offers, (ii) the selection of furniture, and (iii) whether to move forward on any potential property purchase (Tr. Exs. 19, at *49:4–18, 51:16–53:22, 62–64).

55.  During the January 2023 Ngok Deposition, Ms. Ngok admitted she never lived at the Ferncliff Property, stating it was in a dangerous area.  (Tr. Ex. 20, at *21:1–7.)

### (ii) Lease of the Ferncliff Property

56.  Dated September 3, 2019, a lease agreement was executed by and between Mr. Krasner on behalf of Greenwich Land, and Mr. Dinggang Wang ("Mr. Wang") to rent the Ferncliff Property to Mr. Wang.  (Tr. Ex. 46 Ex. A.)

57.  During the September 2023 Ngok Deposition, Ms. Ngok testified she is not familiar with Mr. Wang (Tr. Ex. 21, at *175:9–15) and does not know anything about his tenancy at the Ferncliff Property (Tr. Ex. 21, at *175:16–176:19, 178:14–18).

58.  Dated September 24, 2019, a waiver agreement was executed by and between Mr. Krasner on behalf of Greenwich Land, and Mr. Wang, which waived Mr. Wang's rental obligation in return for Mr. Wang providing complimentary "professional services to assist Greenwich [Land] and its affiliates with various projects including, but not limited to, media consulting."  (Tr. Ex. 47 Ex. A.)

59.  A lease renewal agreement and a "Residential Lease Renewal Waiver Agreement", each dated October 9, 2020, were executed by and between Mr. Krasner on behalf of Greenwich Land, and Mr. Wang, under which Mr. Wang's rental obligation was waived "in exchange for

Wang's agreement to provide professional services to assist Greenwich and its affiliates, including Saraca, with its various projects . . .."  (Tr. Exs. 46–47.)

60.  This Court has previously found Saraca to be connected to the Individual Debtor's media ventures.  (*See* PI Decision ¶ 3.)

61.  A fuel supply contract and a gas bill were delivered to the Ferncliff Property under the Individual Debtor's name.  (Tr. Exs. 50–51.)

### *(iii) Sale of the Ferncliff Property and the Ferncliff Proceeds*

62.  On May 6, 2021, the Clerk of Court for the Delaware Superior Court issued an out of state subpoena to be served on Greenwich Land by Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), which subpoena instructed Greenwich Land that, pursuant to N.Y. C.P.L.R. 5222(b), dissipation of its assets could result in a contempt citation in the New York Supreme Court action styled *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022).  (Tr. Ex. 36.)

63.  On February 15, 2022, the Individual Debtor filed his voluntary Chapter 11 petition with the Court.

64.  On April 6, 2022, Mr. Krasner opened an account at First Bank of Greenwich ("First Bank") for Greenwich Land.  (Tr. Ex. 16; Supp. Tr. Ex. 71 ¶ 6.)

65.  On April 28, 2022, Greenwich Land sold the Ferncliff Property.  (Tr. Ex. 52, at *GREE000426.)

66.  Whitman Breed represented Greenwich Land in the sale of the Ferncliff Property. On April 28, 2022 – the date of sale, Whitman Breed transferred the sale proceeds of $2,207,243.89, the above-defined "Ferncliff Proceeds", to Greenwich Land's account at First Bank of Greenwich ("First Bank").  (Tr. Ex. 53; Supp. Tr. Ex. 71 ¶ 5.)

36

67.   During the September 2023 Ngok Deposition, Ms. Ngok testified she has no recollection of what Greenwich Land did with the Ferncliff Proceeds.  (Tr. Ex. 21, at *92:23–93:4.)

68.   Between May 2022 and March 2023, $630,000.00 of the Ferncliff Proceeds were transferred from Greenwich Land's account at First Bank to its Bento account in 63 separate transfers, each in the amount of $10,000.00.  (Tr. Exs. 30, 54; Supp. Tr. Exs. 70 ¶¶ 5–39, 71 ¶¶ 5, 6.)

69.   During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know (a) why, between May 2022 and March 2023, Greenwich Land transferred, in aggregate, $630,000.00 to its Bento account through 63 transfers, (b) who authorized these transfers, or (c) who had authority to authorize these transfers.  (Tr. Ex. 21, at *117:18–18:21.)

70.   Between May 2022 and December 2022, Greenwich Land transferred $875,000.00 from its First Bank account to Gypsy Mei Food Services LLC ("Gypsy Mei").  (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

71.   During the September 2023 Ngok Deposition, Ms. Ngok testified she was not familiar with Gypsy Mei and did not know why Greenwich Land transferred $875,000.00 of the Ferncliff Proceeds between May and December 2022 to Gypsy Mei or who at Greenwich Land authorized the transfers.  (Tr. Ex. 21, at *127:14–17, 131:25–132:9, 132:17–20.)

72.   Ms. Guo is a member of Gypsy Mei.  (Tr. Ex. 45, at *HR0003019–23; Supp. Tr. Ex. 69 ¶ 5.)

73.   During the September 2023 Guo Deposition, she invoked her Fifth Amendment rights against self-incrimination regarding (a) whether her father, the Individual Debtor, directed the $875,000.00 in transfers from Greenwich Land to Gypsy Mei, for his own benefit; and (b)

whether all the $875,000.00 transferred from Greenwich land to Gypsy Mei remained under the authority and control of the Individual Debtor.  (Tr. Ex. 31, at *101:18–102:13, 103:21–104:11.)

74.  On June 6, 2022, August 22, 2022, and October 13, 2022, Greenwich Land transferred $79,914.88, $59,590.26, and $53,311.90, respectively, from its First Bank account to Zeisler & Zeisler PC ("Zeisler") for a total of $192,917.04 transferred to Zeisler on those dates. (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

75.  Zeisler is counsel to both the Individual Debtor and Ms. Guo in the Individual Debtor's Chapter 11 case and counsel to Ms. Guo in several related adversary proceedings. Zeisler does not represent Greenwich Land or Ms. Ngok in the Individual Debtor's Chapter 11 case or related adversary proceedings.

76.  On November 23, 2022, Greenwich Land transferred $19,575.00 from its First Bank account to Lawall & Mitchell LLC ("L&M").  (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

77.  L&M is counsel to the Individual Debtor in his Chapter 11 case.  L&M does not represent Greenwich Land or Ms. Ngok in the Individual Debtor's Chapter 11 case or related adversary proceedings.

78.  On February 2, 2023, Greenwich Land transferred $29,748.62 from its First Bank account to Chiesa Shahinian & Giantomasi P.C. ("CSG").  (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

79.  CSG is counsel to Ms. Guo in the Individual Debtor's Chapter 11 case and several related adversary proceedings.  CSG does not represent Greenwich Land or Ms. Ngok in the Individual Debtor's Chapter 11 case or related adversary proceedings.

80.  On December 7, 2022, Greenwich Land transferred $75,000.00 from its First Bank account to V.X. Cerda & Associates ("Cerda").  (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

81. Cerda does not represent Greenwich Land or Ms. Ngok in the Individual Debtor's Chapter 11 case or related adversary proceedings.

82. Between September and December 2022, Greenwich Land transferred $26,297.50 from its First Bank account to the Mar-a-Lago Club ("Mar-a-Lago").  (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

83. During the September 2023 Ngok Deposition, Ms. Ngok testified that she had not been to Mar-a-Lago in at least four (4) years.  (Tr. Ex. 21, at *137:5–8.)

### (iv) Purchase of the Taconic Property

84. The purchase of the real property and fixtures located at 373 Taconic Road, Greenwich, Connecticut 06831, above defined as the "Taconic Property", was funded as follows:

> a.  on February 12, 2020, HDNY transferred $500,000.00 from its Capital One account to Greenwich Land's Capital One account (Tr. Exs. 66–67; Supp. Tr. Ex. 68 ¶¶ 7, 46);

> b.  on February 13, 2020, Greenwich Land transferred $460,000.00 from its Capital One account to an account of the law firm Ivey, Barnum & O'Mara ("Ivey Barnum") (Tr. Ex. 67; Supp. Tr. Ex. 68 ¶ 7), its counsel in connection with the purchase of the Taconic Property (Tr. Ex. 18, at *GREE000330), which amount corresponded to the down payment in connection with the purchase (Tr. Ex. 40);

> c.  on February 18, 2020, Greenwich Land received a transfer of $2,000,000.00 into its Capital One account from Saraca (Tr. Ex. 67; Supp. Tr. Ex. 68 ¶ 7), and, on February 19, 2020, HDNY transferred another $2,300,000.00 from its Capital One account to Lamp Capital's Capital One account (Tr. Exs. 66–67; Supp. Tr. Ex. 68 ¶¶ 7, 46); and

> d.  on February 19, 2020, Greenwich Land transferred $4,187,846.77 from its Capital One account to an account of Ivey Barnum (Tr. Ex. 67; Supp. Tr. Ex. 68 ¶ 7), which amount corresponded to the balance of the purchase price of the Taconic Property and certain expenses (Tr. Ex. 40).

85. During the September 2023 Ngok Deposition, Ms. Ngok testified that she did not know why, in February 2020, HDNY and Saraca had transferred funds to Greenwich Land.  (Tr. Ex. 21, at *83:1–11.)

86.   During the September 2023 Guo Deposition, Ms. Guo, the indirect, record owner of HDNY, invoked her Fifth Amendment rights against self-incrimination regarding whether her father, the Individual Debtor, directed the transfer in February 2020 of $2,800,000.00 from HDNY to Greenwich Land for the purchase of the Taconic Property.  (Tr. Ex. 31, at *75:21–77:5.)

87.   During a deposition in this adversary proceeding taken on August 24, 2024 (the "August 2024 de Neree Deposition"), Mr. de Neree, the buyer-side real estate broker in connection with the purchase of the Taconic Property (Tr. Ex. 48, at *12:20–13:3, 14:4–20, 18:13–20:21, 21:3–22:4, 39:22–40:24), testified that:

    a.  on February 11, 2020, the Individual Debtor was present at a showing of the Taconic Property (Tr. Ex. 48, at *45:11–22), where he told Mr. de Neree, in English, that he was willing to make an offer of $4,600,000.00 to purchase the Taconic Property (Tr. Ex. 48, at *45:23–47:25);

    b.  based on his interactions with the Individual Debtor, Mr. de Neree understood that it was the Individual Debtor who was purchasing the Taconic Property under Greenwich Land (Tr. Ex. 48, at *51:11–22, 54:5–19);

    c.  the Individual Debtor made the decision to purchase the Taconic Property, set the offer price, and had the details of the transaction handled by Mr. Krasner, whom Mr. de Neree understood to be the Individual Debtor's assistant (Tr. Ex. 48, at *46:10–47:12, 54:20 – 55:1);

    d.  on February 15, 2020, the Individual Debtor and Mr. de Neree were together at the Taconic Property again to meet with an interior designer and architect about changes the Individual Debtor wanted to make to the Taconic Property (Tr. Ex. 48, at *56:14–58:8);

    e.  the Individual Debtor's wife, daughter, and son were present at a visit to the Taconic Property, at which visit the Individual Debtor was also present, but Mr. de Neree never knew or does not remember their names (Tr. Ex. 48, at *69:7 – 23; 107:11–18); and

    f.  the Individual Debtor never expressed to Mr. de Neree that Ms. Ngok was the one purchasing the Taconic Property and Mr. de Neree never understood that someone other than the Individual Debtor was making the decision to buy the Taconic Property (Tr. Ex. 48, at *108:16–09:1).

88.  Ms. Ngok lives at the Taconic Property.

89.  Since Greenwich Land's purchase of the Taconic Property on February 19, 2020, the Individual Debtor has used the Taconic Property as his residence, where he has resided with his wife, Ms. Ngok, when not residing elsewhere, such as at his apartment in the Sherry-Netherland Hotel or at a mansion in Mahwah, New Jersey.  (Decl. of Mr. Ho Wan Kwok ¶ 6, Main Case ECF No. 107.)  (Tr. Ex. 21, at *80:23–81:13.)

### *Greenwich Parties' Lack of Relevant Knowledge*

90.  As stated above, in the Supplemental Responses, the Greenwich Parties admit, among other things:

a.  Ms. Ngok "did not directly participate in real estate transactions or any banking or other financial transactions of Greenwich Land" (Tr. Ex. 3 Response No. 1; *see also* Tr. Ex. 3 Response Nos. 2, 5);

b.  Ms. Ngok "does not know the source of the funds in [Greenwich Land's] bank accounts" (Tr. Ex. 3 Response No. 2);

c.  Ms. Ngok "does not know the source of funds used to purchase [the Ferncliff and Taconic Properties]" (Tr. Ex. 3 Response No. 3); and

d.  Ms. Ngok "does not know anything about the [Ferncliff Proceeds]" (Tr. Ex. 3 Response No. 4).

91.  As stated above, during the September 2023 Ngok Deposition, Ms. Ngok, in her individual capacity and in her capacity as the Rule 30(b)(6) corporate representative of Greenwich Land, testified, among other things:

a.  Ms. Ngok did not know at which banks Greenwich Land has or had bank accounts (Tr. Ex. 21, at *28:8–14);

b.  Ms. Ngok does not know who has or had the right to spend money from Greenwich Land bank accounts (Tr. Ex. 21, at *28:23–29:11);

c.  Ms. Ngok has never heard of HDNY (Tr. Ex. 21, at *35:5–7);

d.  Ms. Ngok does not know why, on August 16, 2029, HDNY transferred $1,500,000.00 to Greenwich Land (Tr. Ex. 21, at *55:4–8) and does not remember whether she asked HDNY to transfer $1,500,000.00 at that time (Tr. Ex. 21, at *52:21–25);

e.  Ms. Ngok does not know why, in February 2020, HDNY and Saraca transferred a total of $4,800,000.00 to Greenwich Land (Tr. Ex. 21, at *83:1–11);

f.  Ms. Ngok has no recollection of what Greenwich Land did with the Ferncliff Proceeds (Tr. Ex. 21, at *92:23–93:4);

g.  Ms. Ngok does not know what Bento is (Tr. Ex. 21, at *113:1–3) and does not know why, between May 2022 and March 2023, Greenwich Land made 63 transfers of $10,000.00 each – for a total transfer of $630,000.00 – to Bento, who authorized these transfers, or who had authority to authorize these transfers (Tr. Ex. 21, at *117:18–118:21);

h.  Ms. Ngok is not familiar with Gypsy Mei (Tr. Ex. 21, at *127:14–17), does not know why, between May 2022 and December 2022, Greenwich Land transferred a total of $875,000.00 to Gypsy Mei (Tr. Ex. 21, at *132:17–20), or who at Greenwich Land authorized the transfers to Gypsy Mei (Tr. Ex. 21, at *131:25–132:9);

i.  Ms. Ngok does not know why Ms. Guo, her daughter, and Mr. Han, the family chef, were issued cards for the Greenwich Land Bento account despite not being employees, officers, directors, managers, or members of Greenwich Land (Tr. Ex. 21, at *150:23–151:6);

j.  Ms. Ngok does not know why Mr. Krasner spent money from Greenwich Land's Bento account after he resigned from his position with Greenwich Land (Tr. Ex. 21, at *161:9–162:1, 163:9–23, 163:25–164:12);

k.  Ms. Ngok does not know why, in October 2020, Greenwich Land received approximately $10,000,000.00, in aggregate, from Savio Law and ACA Capital (Tr. Ex. 21, at *174:22–175:3), why, in November 2020, Greenwich Land transferred $9,000,000.00 to Lamp Capital (Tr. Ex. 21, at *173:21–25, 174:3–11), and who authorized the transfer from Greenwich Land to Lamp Capital (Tr. Ex. 21, at *175:5–8);

l.  Ms. Ngok is not familiar with Mr. Wang (Tr. Ex. 21, at *175:9–15) and does not know anything about his tenancy at the Ferncliff Property (Tr. Ex. 21, at *175:16–176:19, 178:14–18).

92.  As stated above, during the January 2023 Ngok Deposition, Ms. Ngok testified, among other things:

a.  Ms. Ngok is not familiar with Mr. Krasner (Tr. Ex. 20, at *45:17–19);

b.  Ms. Ngok is not familiar with Mr. Podhaskie (Tr. Ex. 20, at *51:13–14);

c.  Ms. Ngok does not know the name of anyone who is or has ever been an officer of Greenwich Land (Tr. Ex; 20, at *47:12–48:1, 78:14–21); and

d.  Ms. Ngok does not recognize the Ferncliff Property (Tr. Ex. 20, at *134:12–20).

## VI.   DISCUSSION

The Motion for Summary Judgment seeks summary judgment on both (A) the First Claim of the Complaint alleging Greenwich Land is the *alter ego* of the Individual Debtor and, therefore, its property is property of the Estate, which property the Trustee seeks to have turned over; and (B) the Second Claim of the Complaint alleging Greenwich Land is beneficially owned and controlled by the Individual Debtor and, therefore, Ms. Ngok's membership interest in it is property of the Estate, which property the Trustee seeks to have turned over.

Section 541(a)(1) provides that a bankruptcy estate is comprised, in pertinent part, of "all legal or equitable interests of the debtor in property as of the commencement of the case".  A debtor's legal and equitable interests in property are determined by applicable non-bankruptcy law.  *Butner v. United States*, 440 U.S. 48, 55 (1979) (holding state law governs property rights) (case determined under the former Bankruptcy Act); *see Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007) (citing *Butner* and holding state law governed substance of claims relating to state law property rights); *Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998) (holding law under the former Bankruptcy Act remains vital under the Bankruptcy Code absent indication of contrary congressional intent).  Section 542(a) of the Bankruptcy Code provides for turnover of property of a bankruptcy estate via delivery to its trustee.

The applicable non-bankruptcy law is determined by the choice of law rules of this Court's forum state, namely, Connecticut. *Geron ex rel. Thelen LLP v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013). The Court concludes that Connecticut courts would apply Delaware law to both the First and Second Claims, which relate to the internal affairs and corporate governance of Greenwich Land. *See Weber v. U.S. Sterling Securities, Inc.*, 924 A.2d 816, 822–23 (Conn. 2007) (applying local law of state of formation to *alter ego* action and other internal affairs regarding an LLC); RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 303, 304. Moreover, the parties agree with this conclusion, applying Delaware law in their arguments.

## A. First Claim – *Alter Ego*
### 1. Legal Standard

Turning to the Trustee's First Claim, "Delaware courts use the terms 'piercing the corporate veil' and 'alter ego' theory interchangeably." *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 609 n. 4 (D. Del. 2018). Under Delaware law, *alter ego* or piercing the corporate veil has two elements: (i) the corporate entity whose form is to be disregarded is so dominated and controlled by its alleged *alter ego* that the corporate entity and its *alter ego* are, in fact, a single economic unit; and (ii) the corporate form to be disregarded causes fraud or some similar injustice. *See Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968); *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992); *see also Fletcher*, 68 F.3d at 1457 (applying Delaware law); *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 549 B.R. 21, 43–44 (Bankr. S.D.N.Y. 2016) (applying Delaware law).

As to the first element, whether the alleged *alter ego* asserts dominion and control over the corporate entity, several factors are considered, including "(1) whether the company was

adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) (internal citations omitted); *see Blair v. Infineon Tech., AG*, 720 F. Supp. 2d 462, 470–71 (D. Del. 2010). None of these factors are dispositive in determining dominion and control. *Manichaean Cap.*, 251 A.3d at 706–07; *Infineon Tech.*, 720 F. Supp. 2d at 471.

As to the second element, whether the corporate form causes fraud or similar injustice, it is not necessary to establish fraud – it is only necessary to establish injustice, *Fletcher*, 68 F.3d at 1457, or fraudulent intent in the creation of the corporate form – it is only necessary to establish that the corporate form *causes* fraud or a similar injustice, *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (applying Delaware law); *see Martin v. D.B. Martin Co.*, 88 A. 612, 615–16 (Del. Ch. 1913).

Delaware law allows outsider reverse veil-piercing, namely, making the assets of an entity available to the creditors of its parent or owner upon motion of said creditors. *Manichaean Cap.,* 251 A.3d at 714–15. In considering whether to reverse pierce the corporate veil, courts consider "the traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim", discussed above, as well as additional factors reflecting the concern that creditors and other stakeholders of the entity might have their legitimate expectations thwarted. *Id.* Section 544 of the Bankruptcy Code provides bankruptcy trustees statutory standing to bring an outsider reverse veil-piercing action on behalf of creditors at large. 11 U.S.C. § 544(a); *see St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989); *Titan Real Estate Ventures, LLC v. MJCC Realty Ltd. P'ship (In re Flanagan)*, 415

B.R. 29, 47 (D. Conn. 2009); *see also Reid v. Wolf (In re Wolf)*, 644 B.R. 725, 748 (N.D. Ill.

2022); *Spradlin v. Beads & Steeds Inns, LLC (In re Howland)*, 516 B.R. 163, 166–67 (Bankr.

E.D. Ky. 2014); *In re Archdiocese of Milwaukee*, 483 B.R. 693, 697 (Bankr. E.D. Wis. 2012).

### 2. Conclusions of Law
#### i. Dominion and Control

Regarding the first element of *alter ego*, the Trustee argues the Individual Debtor's

dominion and control over Greenwich Land is established by (a) Greenwich Land being

capitalized only by funding from entities related to the Individual Debtor and its capital similarly

being transferred to such entities without business purpose; (b) Greenwich Land's bank accounts

being used to fund personal spending of the Individual Debtor, his family, and his associates,

including those who were never or were only formerly officers of Greenwich Land, unrelated to

its purported business purpose of owning real estate in Greenwich, Connecticut; (c) the

Individual Debtor's control over the purchase, use, and sale of the Ferncliff Property; (d) the

Individual Debtor's control over the purchase of the Taconic Property and his residence therein;

(e) Greenwich Land being staffed by known associates and employees of the Individual Debtor

and sharing its business address with numerous entities related to the Individual Debtor; (f) the

disregard for corporate formalities demonstrated by the foregoing; and (g) the extent to which

Greenwich Land is merely a façade for the Individual Debtor, as demonstrated by the foregoing.

The Greenwich Parties argue the Trustee has not met his burden at summary judgment.

They argue the Trustee has scant evidence to support a determination of dominion and control,

because, as discussed above, they assert (1) much of the Trustee's evidence would be, for the

plethora of reasons discussed above, inadmissible at trial and, as such, cannot be relied upon at

summary judgment; (2) the Court cannot draw an adverse inference based on the individual

Debtor's and Ms. Guo's invocation of their Fifth Amendment rights against self-incrimination;

and (3) the Court cannot take judicial notice of prior orders in these jointly administered Chapter 11 cases and related adversary proceedings or hold them to be law of the case. Moreover, the Greenwich Parties argue what evidence remains is, standing alone, insufficient to establish dominion and control. Finally, as discussed above, they contend there is a genuine dispute of material fact as to whether Mr. Guo, the Individual Debtor's and Ms. Ngok's son, bought the Ferncliff and Taconic Properties.

Above, the Court has overruled the Greenwich Parties' evidentiary objections and has ruled that they cannot rely on Ms. Ngok's deposition testimony taken in the Individual Debtor's Chapter 11 case to support their assertion that her son, Mr. Guo, purchased the Ferncliff and Taconic Properties for her. Therefore, the issue that remains is whether the undisputed facts stated above establish as a matter of law that the Individual Debtor exercised dominion and control over Greenwich Land. For the reasons stated below, the Court concludes a reasonable jury would find that the Individual Debtor so dominated and controlled Greenwich Land such that Greenwich Land had no separate economic existence from the Individual Debtor. *See Anderson*, 477 U.S. at 248.

**a. Individual Debtor's Control over Greenwich Land's Officers and Operations**

The undisputed facts establish that the Individual Debtor controlled Greenwich Land's officers and operations.

First, for her part, Ms. Ngok has neither knowledge of nor control over Greenwich Land's officers and operations. (Undisputed Facts 1–16, 90–92.) Ms. Ngok does not know Greenwich Land's former officers Mr. Krasner or Mr. Podhaskie, both of whom opened bank accounts for Greenwich Land and spent its funds and the latter of whom, Mr. Krasner, worked on Greenwich Land's real estate transactions. (*Compare* Undisputed Facts 4–6 *with* Undisputed

47

Facts 7–9, 21, 54, 56–59, 64, 87.)  Without this knowledge, she could not and did not know and control their activities on behalf of Greenwich Land.  (Undisputed Facts 90–92).  While Ms. Ngok knows Ms. Wang personally, she is unaware of her former role at Greenwich Land. (Undisputed Facts 4–7.)

Second, Mr. Krasner, in his role as an officer of Greenwich Land, operated as an agent of the Individual Debtor.  (Undisputed Facts 10–12, 54, 87.)  The testimony of Attorney Conboy and Mr. de Neree is that Mr. Krasner acted as an agent for the Individual Debtor in his actions to further Greenwich Land's real estate transactions.  (Undisputed Facts 54, 87.)  As discussed above, Ms. Ngok has no knowledge of and did not control Mr. Krasner's actions on behalf of Greenwich Land.  (Undisputed Facts 1–16, 90–92.)  Mr. Krasner has occupied positions at other entities associated with the Individual Debtor, including his adjudged *alter ego*, Golden Spring. (Undisputed Facts 10, 50.)  Provided the opportunity, the Individual Debtor did not dispute his control over Mr. Krasner.  (Undisputed Facts 11–12.)

Third, Mr. Krasner was the officer principally involved in Greenwich Land's largest transactions – its real estate transactions.  (Undisputed Facts 54, 56–59, 64, 87.)

Fourth, Ms. Wang and Mr. Podhaskie have also occupied positions at other entities associated with the Individual Debtor, including his adjudged *alter ego*, Golden Spring. (Undisputed Facts 10, 50.)

Fifth and finally, Greenwich Land shares its business address with other entities associated with the Individual Debtor, including his adjudged *alter ego*, Golden Spring. (Undisputed Fact 14.)

48

For all these reasons, the Court concludes there is no genuine dispute of material fact that the Individual Debtor controlled Greenwich Land's operations and officers.  *See Anderson*, 477 U.S. at 248; *Matsushita Elec.*, 475 U.S. at 586.

### b.  Individual Debtor's Dominion and Control over Real Estate

Moreover, the undisputed facts establish that the Individual Debtor exerted dominion and control over Greenwich Land's real estate.

First, the Individual Debtor controlled the purchase of the Ferncliff and Taconic Properties and sale of the Ferncliff Property.  Attorney Conboy's testified that the Individual Debtor, through the entities HDNY, Golden Spring, and Greenwich Land, and his agent, Mr. Krasner, controlled the purchase and sale of the Ferncliff Property.  (Undisputed Fact 54.)  Mr. de Neree's testified that the Individual Debtor, through various entities at different times, and through his agent, Mr. Krasner, controlled the purchase of the Taconic Property.  (Undisputed Fact 87.)  Furthermore, Mr. de Neree testified that he directly interacted with the Individual Debtor while he was searching for a Greenwich property and was told directly by the Individual Debtor that he would purchase the Taconic Property.  (Undisputed Fact 87.)  Ms. Ngok's testimony, on her own behalf and in her capacity as the Rule 30(b)(6) corporate representative of Greenwich Land, and the Greenwich Parties' admissions, do not dispute the testimony of Attorney Conboy and Mr. de Neree, but rather demonstrates their lack of knowledge about these real estate transactions and the entities and persons involved in them.  (Undisputed Facts 5–6, 43, 45, 47, 85, 90–92.)  The Individual Debtor and Ms. Guo do not dispute the testimony of Attorney Conboy and Mr. de Neree.  (Undisputed Facts 11–12, 15–16, 48, 52, 86.)

Second, the Individual Debtor funded the purchase of the Ferncliff and Taconic Properties.  HDNY funded the purchase of the Ferncliff Property.  (Undisputed Fact 46.)

Attorney Conboy testified she understood the Individual Debtor to be the client on matters related to, among other entities, HDNY. (Undisputed Facts 53–54.) This testimony is undisputed. Ms. Ngok testified she had never heard of HDNY, does not know why it transferred the funds to purchase the Ferncliff Property, and does not remember whether she asked HDNY to do so. (Undisputed Fact 47; *see* Undisputed Fact 43.) The record owner of HDNY, Ms. Guo, did not dispute that her father, the Individual Debtor, funded the purchase of the Ferncliff Property. (Undisputed Fact 51–52.) HDNY and Saraca funded the purchase of the Taconic Property. (Undisputed Fact 84.) Mr. de Neree testified that the Individual Debtor intended to purchase the Taconic Property. (Undisputed Fact 87.) This testimony is also undisputed. As stated above, Saraca is related to the Individual Debtor's media ventures. (Undisputed Fact 60.) Similarly, as discussed above, the record regarding the purchase of the Ferncliff Property establishes that the Individual Debtor uses HDNY to fund real estate purchases. (Undisputed Facts 46–47, 51–54.) Ms. Ngok testified she did not know why HDNY and Saraca transferred the funds used to purchase the Taconic Property to Greenwich Land. (Undisputed Fact 85; *see* Undisputed Fact 43.) Ms. Guo did not dispute that the Individual Debtor caused HDNY to transfer the funds. (Undisputed Fact 86.)

Third, the Individual Debtor controlled the use of the Ferncliff and Taconic Properties. The Individual Debtor controlled Greenwich Land's involvement with the Ferncliff Property from purchase through its eventual sale. As discussed in the preceding paragraph, the Individual Debtor funded and controlled the purchase of the Ferncliff Property. (Undisputed Facts 1–16, 43–55.) Moreover, the Ferncliff Property was rented to Mr. Wang in exchange for his services to Saraca and its affiliates, which are involved in the Individual Debtor's media ventures. (Undisputed Facts 56–61.) Ms. Ngok does not know who Mr. Wang is and had no knowledge of

his tenancy at the Ferncliff Property.  (Undisputed Fact 57.)  Utilities at the Ferncliff Property were billed to the Individual Debtor personally.  (Undisputed Fact 61.)  Finally, as discussed above, the Individual Debtor controlled the sale of the Ferncliff Property.  (Undisputed Facts 1–16, 43, 54, 62–66.)  The Individual Debtor also, as discussed above, funded and controlled the purchase of the Taconic Property (Undisputed Facts 1–16, 43, 84–89) and, from time to time, he resides in the Taconic Property with Ms. Ngok (Undisputed Facts 88–89).  The Taconic Property is the basis upon which this Court was a proper venue for the Individual Debtor to file his voluntary Chapter 11 petition.

Fourth and finally, the Individual Debtor controlled the disposition of the Ferncliff Proceeds.  Ms. Ngok testified she did not recall what happened to the Ferncliff Proceeds. (Undisputed Fact 67–71.)  Mr. Krasner, who both Attorney Conboy and Mr. de Neree understood to be the Individual Debtor's agent in matters related to, among other entities, Greenwich Land (Undisputed Facts 54, 87; *see* Undisputed Facts 5–6), opened the account at First Bank, which received the Ferncliff Proceeds.  (Undisputed Facts 64–66.)  The Ferncliff Proceeds were used to, among other things: (i) pay the Individual Debtor's and Ms. Guo's legal fees related to these jointly administered Chapter 11 cases and related adversary proceedings (Undisputed Facts 74–79), which representation is, in part, shared representation; (ii) to pay Mar-a-Lago despite Ms. Ngok not visiting it after the Ferncliff Proceeds were acquired (Undisputed Facts 82–83); (iii) to fund Greenwich Land's Bento account without Ms. Ngok's knowledge (Undisputed Facts 68–69); and (iv) to fund an entity held by Ms. Guo without Ms. Ngok's knowledge (Undisputed Facts 71–72).

For all these reasons, the Court concludes there is no genuine dispute of material fact that the Individual Debtor asserts dominion and control over Greenwich Land's real estate.  *See*

51

*Anderson*, 477 U.S. at 248; *Matsushita Elec.*, 475 U.S. at 586.  The Individual Debtor purchased, used, and disposed of Greenwich Land's real estate as if it were his own.

### c. Dominion and Control over Finances

Further still, the undisputed facts establish the Individual Debtor exerted dominion and control over Greenwich Land's financial activity.

First, as stated above, the Individual Debtor funded Greenwich Land's real estate transactions.  (Undisputed Facts 5–6, 43, 46–47, 51–54, 60, 84–85, 87.)

Second, as also stated above, the Individual Debtor controlled the use of the Ferncliff Proceeds.  (Undisputed Facts 5–6, 54, 64–72, 74–79, 82–83, 87.)

Third, Ms. Ngok neither has knowledge regarding nor exercised control over Greenwich Land's other financial transactions and bank accounts.  (Undisputed Facts 17–18, 20, 23, 26, 33, 40, 67–71.)  Ms. Ngok does not know at which banks Greenwich Land has or had an account.  (Undisputed Fact 18.)  She does not know what Bento is, despite the Bento debit card in her name associated with the Greenwich Land Bento account spending more than $700,000.00.  (Undisputed Facts 20–21.)  Similarly, Ms. Ngok does not know the source of the funds in Greenwich Land's accounts.  (Undisputed Facts 18, 33, 40, 47, 85.)  Ms. Ngok also lacks knowledge of and control over why and how Greenwich Land spends its funds.  (Undisputed Facts 18, 23, 26, 67–71.)

Fourth and finally, Greenwich Land's funds were spent by the Individual Debtor's relatives and associates, including Ms. Ngok, Mr. Krasner, Mr. Podhaskie, Ms. Guo, and Mr. Han.  (Undisputed Fact 21.)  As noted above, Ms. Ngok does not even know who Mr. Krasner and Mr. Podhaskie are.  (Undisputed Facts 5–6.)  Yet, as also noted above, Mr. Krasner and Mr. Podhaskie have occupied positions at Greenwich Land as well as at other entities associated with

Case 23-05005   Doc 133   Filed 07/02/24   Entered 07/02/24 15:42:36   Page 53 of 61

the Individual Debtor, including his adjudged *alter ego*, Golden Spring.  (Undisputed Facts 4, 7, 10.)  In addition, Mr. Krasner in particular acted as the Individual Debtor's agent with respect to Greenwich Land.  (Undisputed Facts 8, 9, 50, 54, 87.)  Moreover, Mr. Krasner continued to spend Greenwich Land's funds – without the knowledge of Ms. Ngok – after ceasing to be an officer.  (Undisputed Facts 24–26.)  Similarly, Ms. Ngok does not know why Ms. Guo and Mr. Han spent Greenwich Land's funds despite being uninvolved with its business.  (Undisputed Fact 23.)

For all these reasons, the Court concludes there is no genuine dispute of material fact that Individual Debtor dominated and controlled Greenwich Land's financial affairs, transactions, and assets.  *See Anderson*, 477 U.S. at 248; *Matsushita Elec.*, 475 U.S. at 586.  The Individual Debtor treated Greenwich Land's financial assets as his own.

### d.  Disregard of Corporate Form

Finally, the undisputed facts establish that Greenwich Land's corporate form was disregarded.

First, Ms. Ngok, the record sole member of Greenwich Land and, as of the hearing on the Motion for Summary Judgment, the sole remaining officer of Greenwich Land has, as discussed extensively above, no knowledge of and exerted no control over Greenwich Land's officers, operations, real estate, and bank accounts.  (Undisputed Facts 5–6, 17–18, 43, 90–92.)  Greenwich Land was operated without direction from Ms. Ngok, contrary to the powers and authority vested in her.  (*Compare* Undisputed Facts 5–6, 17–18, 43, 90–92 *with* Undisputed Fact 3.)  Instead, as discussed above, the Individual Debtor controlled the officers and operations of Greenwich Land.  (Undisputed Facts 1–16, 54, 87.)

53

Second, Greenwich Land's assets were used to benefit other entities and persons than itself. As discussed above, Mr. Wang's rent for living in the Ferncliff Property was waived, without Ms. Ngok's knowledge, in exchange for Mr. Wang providing media services to Saraca and affiliated entities rather than in consideration of services rendered Greenwich Land. (Undisputed Facts 56–59.) As also discussed above, the Ferncliff Proceeds were (i) used to pay legal expenses incurred by persons and entities other than Greenwich Land; (ii) transferred to entities for no consideration to Greenwich Land or Ms. Ngok; and (iii) placed into a bank account where they were spent by persons unrelated to Greenwich Land or whose relationship with Greenwich Land had terminated – all, again, without the knowledge of Ms. Ngok. (Undisputed Facts 19–29, 64–83.)

Third and finally, Greenwich Land's capitalization was temporary at best. Greenwich Land received large influxes of cash – for reasons unknown to Ms. Ngok – to fund its purchases of property. However, rather than being maintained to provide for its expenses and liabilities, Greenwich Land's funds were consistently drained, without business purpose, by other entities and persons. (Undisputed Facts 17–43, 46–47, 64–85.)

For all these reasons, the Court concludes there is no genuine dispute of material fact that the corporate form of Greenwich Land was disregarded. *See Anderson*, 477 U.S. at 248; *Matsushita Elec.*, 475 U.S. at 586. Greenwich Land operated as the quintessential shell company.

### e. The Individual Debtor Dominated and Controlled Greenwich Land

As set forth in the foregoing, there is no genuine dispute of material fact that, under Delaware law, the Individual Debtor dominated and controlled Greenwich Land. *See Manichaean Cap.*, 251 A.3d at 706. Greenwich Land functioned as a façade for the Individual

54

Debtor who controlled its assets as if they were his own; Greenwich Land's corporate form was disregarded by the Individual Debtor, his associates, his family members, and entities associated with him; Greenwich Land's funds were siphoned by the Individual Debtor, his associates, his family members, and entities associated with him; and Greenwich Land was only temporarily capitalized and solvent as funds transited through it in accordance with the purposes of the Individual Debtor.  *See id.*  The Trustee is entitled to the conclusion as a matter of law that the Individual Debtor dominated and controlled Greenwich Land.  *See Anderson*, 477 U.S. at 250; *Manichaean Cap.*, 251 A.3d at 706; *Infineon Tech.*, 720 F. Supp. 2d at 471.

### ii. Fraud or Similar Injustice

Regarding the second element of *alter ego*, the Trustee argues Greenwich Land's corporate form causes fraud or similar injustice because it serves to shield the Individual Debtor's assets from his creditors and has been used to subvert New York law and the Bankruptcy Code.  The Greenwich Parties argue Ms. Ngok engaged in no wrongdoing with respect to Greenwich Land.

The Court concludes, based on the undisputed facts, there is no genuine dispute of material fact that Greenwich Land's corporate form causes fraud or similar injustice.  *See Anderson*, 477 U.S. at 248; *Matsushita Elec.*, 475 U.S. at 586.

Greenwich Land's corporate form has served to shield assets, particularly the Ferncliff and Taconic Properties and the Ferncliff Proceeds, from the Individual Debtor's creditors, which assets, as discussed above, the Individual Debtor dominates and controls as if they were his own. None of Greenwich Land's assets were disclosed on the Individual Debtor's schedules and statements – wherein he disclosed less than $4,000 in assets – as being available for creditors. (*See* Main Case ECF No. 77–79.)

55

Moreover, Greenwich Land's corporate form has been used to subvert these bankruptcy proceedings in contravention of law, this Court's orders, and the Greenwich Parties' own agreements entered into before the Court.  Greenwich Land (a) sold the Ferncliff Property after being served with the PAX Subpoena, which restricted its disposition of assets pursuant to New York state law, and the imposition of the automatic stay in the Individual Debtor's Chapter 11 case, which restricted his disposition of assets; and (b) dissipated the Ferncliff Proceeds after being served with the PAX Subpoena and the imposition of the automatic stay; after the entry of the TRO; and after the entry of the Consensual PI.  (Undisputed Facts 19–29, 62–83.)

Finally, Greenwich Land is a closely held limited liability company whose sole member is the Individual Debtor's wife, and which exists, as discussed above, to hold real estate and move money that the Individual Debtor controls.  In the fraudulent transfer context, each of these facts is considered a badge of fraud.  *Salomon ex rel. Kaiser v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983).  In the present context, each is indicative that the corporate form causes fraud or similar injustice.

The Greenwich Parties' argument to the contrary is not persuasive.  The applicable standard is not whether Ms. Ngok engaged in any wrongdoing.  Rather, the standard is whether Greenwich Land's corporate form caused fraud or similar injustice.  *NetJets*, 537 F.3d at 177.

For all these reasons, the Trustee is entitled to the conclusion as a matter of law that the corporate form of Greenwich Land causes fraud or similar injustice.  *See Anderson*, 477 U.S. at 250; *Pauley Petroleum*, 239 A.2d at 633; *NetJets*, 537 F.3d at 177; *Fletcher*, 68 F.3d at 1457; *D.B. Martin Co.*, 88 A. at 615–16.

### iii.  Greenwich Land Is the Individual Debtor's *Alter Ego*

For the reasons stated above, the traditional elements of *alter ego* are established by the undisputed facts before the Court at summary judgment.  *See Pauley Petroleum*, 239 A.2d at 633; *Cencom Cable*, 752 A.2d at 1184; *Ingersoll Publ'n*, 621 A.2d at 793; *see also Fletcher*, 68 F.3d at 1457 (applying Delaware law); *Tronox*, 549 B.R. at 43–44 (same).  The Court also concludes reverse veil-piercing would not, on the undisputed facts before it, unfairly harm the legitimate expectations of Greenwich Land's creditors.  As stated above at length, (a) Greenwich Land's capitalization and solvency are ephemeral: Greenwich Land's assets were purchased with funds it received for no consideration and Greenwich Land's assets were transferred for no consideration; (b) Greenwich Land routinely engaged in activity outside its purported business purpose of owning land in Greenwich, Connecticut; and (c) Greenwich Land is currently being drained of its assets in contravention of law, this Court's orders, and its own agreements entered into before the Court.  *See Manichaean Cap.*, 251 A.3d at 714–15.

Therefore, the Court concludes the Trustee is entitled to judgment as a matter of law on the record of undisputed material that Greenwich Land is the *alter ego* of the Individual Debtor. *See Anderson*, 477 U.S. at 250; *Pauley Petroleum*, 239 A.2d at 633; *Cencom Cable*, 752 A.2d at 1184; *Ingersoll Publ'n*, 621 A.2d at 793; *see also Fletcher*, 68 F.3d at 1457 (applying Delaware law); *Tronox*, 549 B.R. at 43–44 (same).

### B.  Second Claim – Beneficial Ownership
#### 1.  Legal Standard

Turning to the Trustee's Second Claim, Delaware also recognizes beneficial ownership claims.  *See Salt Dome Oil Corp. v. Schenk*, 41 A.2d 583, 586 (Del. 1945) (citing *Chadwick v. Parkhill Corp.*, 141 A. 823 (Del. Ch. 1928)); *see also Hudak v. Procek*, 806 A.2d 140 (Del. 2002); *Preston v. Allison*, 650 A.2d 646 (Del. 1994); *Hannigan v. Italo Petroleum Corp. of Am.*,

77 A.2d 209, 213 (Del. 1949).  Furthermore, creditors may bring beneficial ownership actions. *See LiButti v. United States*, 968 F. Supp. 71, 75 (N.D.N.Y. 1997), *aff'd in part, rev'd in part on other grounds*, 178 F.3d 114 (2d Cir. 1999); *Paloian ex rel. Dordevic v. Dordevic (In re Dordevic)*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021), *aff'd by* 67 F.4th 372 (7th Cir. 2023). Section 544 of the Bankruptcy Code provides bankruptcy trustees statutory standing to bring a beneficial ownership claim on behalf of creditors at large.  11 U.S.C. § 544(a); *see PepsiCo*, 884 F.2d at 700; *Titan Real Estate*, 415 B.R. at 47.

Courts consider, among other things, whether "(1) there is a close personal relationship between the nominee and the transferor; (2) the nominee paid little or no consideration for the property; (3) the parties placed the property in the name of the nominee in anticipation of collection activity; (4) the parties did not record the conveyance; and, (5) the transferor continues to exercise dominion and control over the property."  *Dordevic*, 67 F.4th at 381.

## 2.  Conclusions of Law

The Trustee argues application of the *Dordevic* factors establishes the Individual Debtor equitably owns Greenwich Land.  He argues (a) Ms. Ngok is the Individual Debtor's wife; (b) Ms. Ngok is not the source of any substantial portion of Greenwich Land's assets or the funds used to purchase those assets; (c) Ms. Ngok's nominal ownership of Greenwich Land is used to frustrate collection activity; and (d) the Individual Debtor dominates and controls Greenwich Land.

The Greenwich Parties raise the objections to the Trustee's evidence discussed above. On those bases, the Greenwich Parties assert the Trustee has insufficient evidence to establish the Individual Debtor's dominion and control over Greenwich Land.  The Greenwich Parties also

argue there is a genuine dispute of material fact as to whether Mr. Guo, the Individual Debtor's and Ms. Ngok's son, bought the Ferncliff and Taconic Properties.

As discussed above, the Court has overruled the Greenwich Parties' evidentiary objections.  The Court will not consider Ms. Ngok's earlier Rule 2004 deposition testimony regarding Mr. Guo because it contradicts her deposition testimony in this adversary proceeding, the Greenwich Parties' admissions in this adversary proceeding, and the Greenwich Parties' disclosures in this adversary proceeding.  The remaining issue, therefore, is whether the undisputed facts set forth above establish the Trustee is entitled to judgment as a matter of law that the Individual Debtor equitably owns Greenwich Land.

The Court concludes there is no genuine dispute of material fact and the Trustee is entitled to judgment as a matter of law that the Individual Debtor beneficially owns Greenwich Land.  The Individual Debtor's dominion and control over Greenwich Land has been extensively discussed regarding the First Claim.  For the reasons stated above, the Court incorporates its conclusion in the preceding discussion that the Individual Debtor dominates and controls Greenwich Land.  Similarly, the use of Greenwich Land to frustrate collection efforts, including in the Individual Debtor's Chapter 11 case, has been discussed above.  The Court incorporates that discussion herein and concludes therefrom that Greenwich Land's corporate form frustrates collection efforts.  Ms. Ngok's nominal ownership contributes to that frustration.  Moreover, Ms. Ngok's complete lack of knowledge regarding and responsibility for the funding of Greenwich Land is also discussed extensively above.  The Court again incorporates that discussion herein and concludes therefrom that Ms. Ngok is not the source of Greenwich Land's assets.  Finally, it is uncontested that Ms. Ngok has a close relationship with the Individual Debtor: the Greenwich Parties assert she is his wife.  Hence, on the undisputed facts before the Court, four out of the

five *Dordevic* factors support the conclusion that the Individual Debtor equitably owns Greenwich Land.  67 F.4th at 381.

Therefore, on the basis of the undisputed record, the Court concludes the Trustee is entitled to judgment as a matter of law that the Individual Debtor equitably owns Greenwich Land.  *See Anderson*, 477 U.S. at 250; *Dordevic*, 67 F.4th at 381.

## VII.    CONCLUSION AND ORDER

For the reasons stated above, the Court grants the Motion for Summary Judgment as to both the First and Second Claims of the Complaint.  Given the undisputed facts, the Trustee is entitled to judgment as a matter of law that, under Delaware law, (A) Greenwich Land is the *alter ego* of the Individual Debtor and (B) the Individual Debtor equitably owns Greenwich Land.  *See* Fed. R. Civ. P. 56, *made applicable by* Fed. R. Bankr. P. 7056; *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 248–51; *Matsushita Elec.*, 475 U.S. at 586.  Therefore, pursuant to 11 U.S.C. §§ 541, 542, and 544, the Trustee is entitled to judgment as a matter of law that, respectively, all Greenwich Land's assets and Ms. Ngok's membership interest in Greenwich Land are property of the Estate.  Accordingly, it is hereby

**ORDERED:**  The Motion for Summary Judgment (ECF No. 77) is **GRANTED**.  Pursuant to Fed. R. Civ. P. 58(a), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7058, a separate judgment shall enter consistent with this Opinion and Order; and it is further

**ORDERED:**  The Motion to Strike (ECF No. 122) is **DENIED**; and it is further

60

**ORDERED:**  The documents submitted in support of and in opposition to the Motion for Summary Judgment are unsealed to the extent necessary to publish this Opinion.  Except as provided herein, the Sealing Orders (ECF Nos. 87, 88, 119) remain in full force and effect until further order of the Court.

Dated at Bridgeport, Connecticut this 2nd day of July, 2024.

Julie A. Manning
United States Bankruptcy Judge
District of Connecticut