# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: KWOK,<br>*Debtors* | BANKR. NO. 22-50073 (JAM)<br>*Chapter 11* |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE,<br>*Plaintiff*,<br>v.<br>GREENWICH LAND, LLC and HING CHI NGOK,<br>*Defendants*. | ADV. PRO. NO. 23-5005 |
| GREENWICH LAND, LLC and HING CHI NGOK,<br>*Movants*,<br>v.<br>LUC A. DESPINS, CHAPTER 11 TRUSTEE,<br>*Respondent*. | CIVIL NO. 3:23-MC-62 (KAD)<br><br>JANUARY 2, 2025 |

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

This action arises from an adversary proceeding commenced in the United States Bankruptcy Court in the District of Connecticut by Chapter 11 Trustee Luc. A. Despins (the "Trustee"), appointed in the Chapter 11 case of Ho Wan Kwok (the "Debtor"), against Greenwich Land, LLC ("Greenwich Land") and Hing Chi Ngok ("Ms. Ngok" or "Ms. Guo") (collectively, the "Defendants" or "Movants"). *Despins v. Greenwich Land, LLC, et al.*, No. 23-ap-5005 (hereinafter, the "Adversary Proceeding"). In this Adversary Proceeding, the Trustee alleges that

Defendant Greenwich Land is controlled and/or owned by the Debtor, and seeks, *inter alia*, an alter ego judgment against Greenwich Land. *See id.*, ECF No. 1. On July 7, 2023, Defendants moved to withdraw the reference from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). *See generally* Motion for Withdrawal of the Reference ("MWR"), ECF No. 1. For the reasons set forth below, the Motion for Withdrawal of the Reference is **DENIED**.

**Allegations and Procedural History**

The Court presumes the parties' familiarity with the underlying allegations and repeats only those necessary for deciding the instant motion.

Formed in July 2019, Greenwich Land is a Delaware LLC which owned property at 373 Taconic Road in Greenwich, Connecticut (the "Taconic Road Property"), which it purchased in February 2020.[1] *See* MWR at 2. Ms. Ngok is the Debtor's wife. *Id.* She previously resided at the Taconic Road Property, and is the purported sole member of Greenwich Land.[2] *Id.*

On March 27, 2023, the Trustee commenced this Adversary Proceeding seeking: (1) a declaratory judgment that Greenwich Land is the Debtor's alter ego, and that the Debtor—not Ms. Ngok—is the equitable owner of Greenwich Land; and (2) ordering turnover of Greenwich Land's assets and membership interest to the Trustee.[3] *See* Complaint, Adv. Proc., ECF No. 1. Though the Trustee's underlying alter ego claim arises under Delaware law, the Adversary Proceeding

---

[1] Consistent with the Bankruptcy Court's Order Authorizing and Approving Sale of the Greenwich Property, *see In re: Kwok*, No. 22-bk-50073, ECF No. 3690, on October 18, 2024, the Taconic Road Property was sold, and the proceeds therefrom distributed to the Trustee.

[2] In refuting the Trustee's alter ego claims, Movants contend that Ms. Ngok is indeed the sole member of Greenwich Land, and object to the Trustee's use of "purported" in this context. *See* MWR at 3.

[3] On July 2, 2024, the Bankruptcy Court granted the Trustee's Motion for Summary Judgment in the Adversary Proceeding, declaring that: "the Trustee is entitled to judgment as a matter of law that, under Delaware law, (A) Greenwich Land is the alter ego of the Individual Debtor and (B) the Individual Debtor equitably owns Greenwich Land," and further finding that "pursuant to 11 U.S.C. §§ 541, 542, and 544, the Trustee is entitled to judgment as a matter of law that, respectively, all Greenwich Land's assets and Ms. Ngok's membership interest in Greenwich Land are property of the Estate." *See* Adv. Proc., ECF No. 133. Defendants' appeal of the Bankruptcy Court's summary judgment decision is currently in briefing, and pending before this Court. *See In re: Kwok*, No. 3:24-cv-1185.

seeks declaratory relief pursuant to Sections 541, 542, and 544 of the Bankruptcy Code. *See generally id.* Indeed, the Trustee asserts that this Adversary Proceeding is "part and parcel of the Trustee's overall efforts to recover estate assets," and stems directly from an investigation which uncovered "substantial evidence that Greenwich Land is controlled and/or owned by the Debtor, and that the Debtor benefits from, and exercises dominion and control over, its assets, which consist of two multi-million [dollar] homes in Connecticut."[4] *See* Trustee Objection ("Trustee Obj."), ECF No. 11 at 9. In support of its claims, the Trustee asserts, *inter alia*, that:

    a. Greenwich Land was managed by the Debtor's agents and/or employees, who comprised, with Defendant Ngok, all the officers of Greenwich Land (which currently has no officers at all).
    b. The purported owner of Greenwich Land, Defendant Ngok, knows nothing about Greenwich Land and was never meaningfully involved in its affairs.
    c. Greenwich Land uses the same address as the Debtor and his other shell companies.
    d. Greenwich Land and its assets were funded by other Debtor shell companies.
    e. The Debtor was the decision-maker directing Greenwich Land's purchases and sales of real estate, as recognized by the attorneys and brokers working on such transactions, who took direction from the Debtor through his agent and/or employee Max Krasner.
    f. The Debtor uses Greenwich Land's principal asset as his residence and Greenwich Land pays the Debtor's expenses in connection with his residence there.

*See* Complaint, Adv. Proc., ECF No. 1 at 24–25.

On May 9, 2023, Defendants filed their Answer to the Trustee's Complaint. Defs.' Answer, Adv. Proc., ECF No. 34. On July 7, 2023, Defendants moved to withdraw the reference from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). *See* ECF No. 1.

**Discussion**

Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, district courts have original jurisdiction over bankruptcy cases and related proceedings. *See Wellness Int'l*

---

[4] Greenwich Land previously owned property located at 33 Ferncliff Road in Cos Cob, Connecticut, but in April 2022, the property was sold. Complaint, Adv. Proc., ECF No. 1 at ¶ 31.

*Network, Ltd. v. Sharif*, 575 U.S. 665, 670 (2015) (citing 28 U.S.C. §§ 1334(a),(b)). However, "each district court may provide that any or all bankruptcy cases and related proceedings shall be referred to the bankruptcy judges for the district." *Id.* (citing 28 U.S.C. § 157(a)). The District of Connecticut has done so. *See* 1984 Standing Order re: Bankruptcy Cases and Proceedings.[5] Withdrawal of such proceedings back to the district court may be either "mandatory" or "permissive."[6]

Traditionally, in the Second Circuit, motions to withdraw the reference are governed by *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993). Under the initial *Orion* framework, the "threshold determination" in evaluating a motion to withdraw the reference was whether a case involved "core" or "non-core" matters, as defined by Congress in 28 U.S.C. § 157(b). "After deciding that question . . . , a court should consider whether the claim is 'legal or equitable' and weigh 'considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law.'" *In re N. Boulevard Automall, LLC*, No. 20-MC-142 (RPK), 2022 WL 5184729, at *3 (E.D.N.Y. Oct. 5, 2022) (citing *Orion*, 4 F.3d at 1101).

Subsequent to *Orion*, the Supreme Court, in *Stern v. Marshall*, held that bankruptcy courts may lack constitutional authority to issue final judgments even in certain proceedings traditionally thought of as "core" bankruptcy proceedings. *See* 564 U.S. 462 (2011). Accordingly, in the wake of *Stern*, "many courts have treated [*Orion*'s] first-stage inquiry as whether the bankruptcy court has authority to finally adjudicate the matter, rather than whether the claim is core or non-core."

---

[5] https://www.ctd.uscourts.gov/sites/default/files/general-ordes/1984_Standing_Order.pdf

[6] Movants are not seeking mandatory withdrawal. Instead, they are seeking permissive withdrawal pursuant to 28 U.S.C. § 157(d), which states that a "district court may withdraw . . . any case or proceeding referred [to the bankruptcy court], on its own motion or on a timely motion of any party, for cause shown."

*In re N. Boulevard*, 2022 WL 5184729 at *3 (citing *In re Lyondell Chem. Co.*, 467 B.R. 712, 719 (S.D.N.Y. 2012)).

Here, Movants first argue, per *Stern*, that the Bankruptcy Court lacks constitutional authority to enter a final judgment as to the Trustee's claims and that such claims must be decided in this Court. The Trustee disagrees, arguing that the Bankruptcy Court has both constitutional and statutory authority to enter a final judgment. The parties also diverge on the issue of whether the remaining *Orion* factors collectively weigh in favor of withdrawal.

The Bankruptcy Court's Authority to Enter a Final Judgment

Preliminarily, the Court concludes that it need not determine the post-*Stern* "first-stage" *Orion* factor at this juncture, and offers no opinion on the issue. It is well-settled that *Orion*'s threshold final judgment inquiry is "not dispositive of a motion to withdraw a reference." *U.S. Bank, Nat'l Ass'n as Tr. for GSAMP Tr. 2006-NC1 Mortg. Pass-Through Certificates Series 2006-NC1 v. Osuji*, No. 18-MC-821 (JMA), 2024 WL 1092682, at *3 (E.D.N.Y. Mar. 13, 2024) (citing *In re Ne. Indus. Dev. Corp.*, 511 B.R. 51, 53 (S.D.N.Y. 2014) (collecting cases)); *see also In re Jacoby & Meyers-Bankr. LLP*, No. 15-CV-7144 (RA), 2017 WL 4838388, at *4 (S.D.N.Y. Oct. 25, 2017) ("[t]hat the Bankruptcy Court lacks authority to enter final judgment on the claims presented in this action is not, however, dispositive of Defendants' motion to withdraw the reference."). Indeed, the remaining *Orion* factors, taken together, can—and often do—warrant a finding that the movant has not demonstrated adequate cause to withdraw the reference. *See, e.g.*, *In re N. Boulevard*, 2022 WL 5184729 at **3–4; *In re Orion HealthCorp, Inc.*, No. 23-MC-1468 (GRB), 2024 WL 1211338, at *8 (E.D.N.Y. Mar. 21, 2024) ("an analysis of the *Orion* factors, as modified by *Stern*, supports the Court's conclusion that [movant] has not demonstrated cause to withdraw the reference."). As discussed below, the Court concludes that the remaining *Orion*

factors overwhelmingly weigh against withdrawal and accordingly, the Court need not determine at this juncture whether the Bankruptcy Court has authority to finally adjudicate the Trustee's claims.[7]

The Remaining *Orion* Factors

Movants argue: (1) that considerations of judicial efficiency weigh in favor of withdrawal; (2) that their demand for a jury trial requires withdrawal; (3) that withdrawal will not interfere with the uniform administration of the broader Chapter 11 case; and (4) they are not forum shopping. In response, the Trustee asserts that: (a) considerations of efficiency weigh heavily against withdrawal; (b) withdrawal would undoubtedly interfere with the bankruptcy administration; and (c) Movants are indeed forum shopping. The Court agrees with the Trustee.

"Core" vs. "Non-Core"

As a threshold matter, the Court observes that much of Movants' argument as to the remaining *Orion* factors is partially—if not entirely—based on their broader assertion that this Adversary Proceeding is "non-core," and that the Trustee's claims merely seek to augment the estate. Indeed, Movants specifically contend that alter ego claims are not *per se* "core" proceedings, and that the Trustee's insistence to the contrary misinterprets and mischaracterizes

---

[7] In their opening appellate brief as to the Bankruptcy Court's summary judgment order, Appellants Greenwich Land and Ms. Ngok argue that the Trustee's ensuing sale of the subject Taconic Road Property improperly rendered the Bankruptcy Court's summary judgment order a final judgment. *See In re: Kwok*, No. 3:24-cv-1185, Appellant Br., ECF No. 18 at 23–24. As such, Appellants contend that "the Bankruptcy Court usurped the District Court's role in ruling on the [instant] motion to withdraw the reference and deprived Appellants of their constitutional right to have the action decided in an Article III court." *Id.* at 24. Having herein denied the instant motion to withdraw, the Court will take up Appellants' related appeal in due course, in which it will review *de novo* the Bankruptcy Court's grant of summary judgment in favor of the Trustee. *See Springfield Hospital, Inc. v. Guzman*, 28 F.4th 403, 415 (2d Cir. 2022) (citing *In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001)). Accordingly, any concerns regarding Movants' purported right to have this action decided in an Article III court are misplaced as under any construct, Movants will obtain *de novo* review of the Bankruptcy Court's alter ego and beneficial ownership determinations by an Article III judge. Moreover, the Bankruptcy Court was not required to stay the underlying Adversary Proceeding pending this Court's adjudication of the instant motion. *See, e.g.*, *Thaler v. Parker*, 525 B.R. 582, 583 n.1 (E.D.N.Y. 2014).

the relevant case law. *See* Movants' Reply, ECF No. 12 at 8. The Court disagrees and finds, under these circumstances, that the Trustee's claims are "core" proceedings.

In *Central Vermont Public Service Corporation v. Herbert*, the Second Circuit determined that "the trustee is 'the proper person to assert claims . . . against the debtor's alter ego or others who have misused the debtors property in some fashion,' and by extension, we have held that such alter ego claims are core proceedings." 341 F.3d 186, 192 (2d Cir. 2003). Indeed, "[a]s long as state law permits alter ego tort claims or similar actions, such actions are core proceedings because they 'relate[] to the property of the estate,' and 'bring [] property into the estate of the debtor . . .'" *Id.*; *see also In re Sky Country Ests., LLC*, No. 17-11617-TL7, 2018 WL 3854012, at *5 (Bankr. D.N.M. Aug. 10, 2018) ("Alter ego claims brought by bankruptcy trustees are core proceedings."); *In re Madison Bentley Associates, LLC*, 474 B.R. 430, 438 (S.D.N.Y. 2012) ("the alter ego claim at bar is also core.").

Movants' attempts to distinguish this Adversary Proceeding from those at issue in *Central Vermont* and *In re Madison* are misplaced. For example, Movants rely on the fact that *Central Vermont* involved a bankruptcy court's injunction barring claims against individual owners of a debtor company and that the defendants in *In re Madison* did not contest that the alter ego claim was "core." But beyond observing these factual differences, Movants argument is more rhetoric than substance. Neither *Central Vermont* nor *In re Madison* expressly confine their holdings to the underlying factual or procedural posture of each case. And although, presumably borrowing from *Stern*, Movants repeatedly accuse the Trustee of seeking only to "augment the estate" by cloaking this tort claim as one founded in bankruptcy, Movants do not meaningfully explain why this action is not, in fact, a "core" proceeding as discussed by the Second Circuit and numerous district courts in this Circuit. And frankly, identifying assets which perhaps rightly belong to the

estate (as opposed to litigating an independent tort claim for damages), is the very foundation of a Trustee's responsibility.  Insofar as the Trustee's claims are permitted under state law and arise from Movants' purported alter ego relationship with the Debtor, the claims fall squarely within "the context of [the] cases" discussed in *Central Vermont*, wherein alter ego claims were deemed "core" proceedings.  *Central Vermont*, 341 F.3d at 192.

   *Judicial Efficiency*

  Having determined that the Adversary Proceeding is a "core" proceeding, the Court next turns to the other *Orion* factors.  The Court first determines that considerations of efficiency weigh heavily against withdrawal.  Courts in this Circuit regularly deny motions to withdraw the reference in circumstances where the Bankruptcy Court has already administered the adversary proceeding, and is otherwise "deeply familiar with the facts of the underlying Chapter 11 petition." *See, e.g.*, *In re Orion*, 722 F. Supp. 3d at 111; *In re N. Boulevard*, 2022 WL 5184729 at *3; *In re Lyondell*, 467 B.R. at 723.  Here, notwithstanding Movants' timely motion, the Bankruptcy Court has continued to administer this specific Adversary Proceeding for nearly two years, overseeing and resolving, *inter alia*, preliminary injunction litigation, discovery disputes, evidentiary issues, and dispositive motions.  *See In re Orion*, 722 F. Supp. 3d at 111 (declining to withdraw reference where "Bankruptcy Court has administered the Adversary Proceeding for over two years, overseen discovery, held a motion hearing, and issued a decision on defendant's Motion to Dismiss or Compel Arbitration.").  Moreover, there is little doubt that Judge Manning is deeply familiar with the underlying facts of the Debtor's broader Chapter 11 case.  The Debtor's underlying bankruptcy is a far reaching, some might say sprawling, inquiry into a vast network of shell companies utilized by the Debtor to conceal assets.  The Debtor declared assets of less than $5,000.00 when he filed bankruptcy.  The Trustee has already identified and brought into the estate millions of dollars

through various adversary proceedings, over all of which Judge Manning has presided. Indeed, throughout the Debtor's Chapter 11 case—which itself has nearly 4,000 entries—and its voluminous related adversary proceedings, the Bankruptcy Court has held frequent hearings, issued dozens of written opinions, and otherwise resolved an enormous number of additional ancillary issues, some of which share close factual and legal similarities to those posed in this Adversary Proceeding (*i.e.*, alter ego and equitable ownership claims arising from the Debtor's complex and prolific "shell-game").[8] Accordingly, the Court concludes that withdrawal of the reference here would result in tremendous, categorical inefficiencies.

*Uniform Administration*

Likewise, the Court finds that withdrawal under these circumstances would assuredly interfere with the uniform administration of the Debtor's broader Chapter 11 case. As discussed above, it is abundantly clear that, even beyond its greater familiarity with bankruptcy issues as a whole, the Bankruptcy Court has a profoundly greater understanding of the Debtor's underlying Chapter 11 case, to include numerous related adversary proceedings involving factual and legal issues similar to those presented here. *See In re Enron Corp.*, No. 04-CV-509 (MBM), 2004 WL 2149124, at *3 (S.D.N.Y. Sept. 23, 2004). Additionally, the Court agrees that, as a "core" proceeding, the Bankruptcy Court should have the first opportunity to address the Trustee's claims, which, as noted above, it already has. *See In re N. Boulevard*, 2022 WL 5184729 at *4 (withdrawal not warranted because "[s]everal of the Trustee's claims . . . are 'core' claims, with which bankruptcy courts have considerable experience") (citation omitted).

---

[8] The Court further agrees with the Trustee that withdrawal here would surely cause confusion and inefficiency, given that the Bankruptcy Court would retain authority over the many related adversary proceedings still pending before it, as well as the broader Chapter 11 case itself.

*Forum Shopping*

Lastly, the Court shares the Trustee's concerns that Movants are engaged in forum shopping. Courts in this Circuit have consistently acknowledged that 28 U.S.C. § 157(d) should be narrowly construed such that it does not merely provide an "escape hatch" out of the Bankruptcy Court. *See In re Enron*, 2004 WL 2149124 at *5; *In re CIS Corp.*, 188 B.R. 873, 877 (S.D.N.Y. 1995). Here, in the broader Chapter 11 case and its related adversary proceedings, the Bankruptcy Court has issued a number of decisions unfavorable to the Debtor, his associates, and/or his related entities, including several decisions identifying various entities as alter egos of the Debtor and directing assets be transferred to the bankruptcy estate. It follows that an allegedly similarly situated entity such as Greenwich Land might prefer to have a different court examine the Trustee's alter ago claims.[9] As such, the Court is concerned that Movants are seeking the proverbial "escape hatch" here, and is generally unpersuaded by Movants' insistence to the contrary. Therefore, this factor also weighs against withdrawal of the reference.

**Conclusion**

For the foregoing reasons, Movants' Motion for Withdrawal of the Reference is **DENIED without prejudice** to a renewed motion, as may be appropriate, if the Adversary Proceeding becomes trial ready.[10]

---

[9] As noted above, Judge Manning entered summary judgment in the Trustee's favor and concluded, *inter alia*, that Greenwich Land is the Debtor's alter ego, and that the Debtor equitably owns Greenwich Land and its assets.

[10] Insofar as the instant motion is being denied without prejudice to a renewed motion if the Adversary Proceeding becomes trial ready, the Court finds that Movants' arguments regarding their demand for a jury trial are unpersuasive at this juncture. "Courts in this Circuit have held consistently that a party's entitlement to a jury trial alone is insufficient to compel immediate withdrawal of the reference." *In re Enron Corp.*, 2004 WL 2149124 at *4. If, upon *de novo* review of the order granting summary judgment in favor of the Trustee, this Court finds error and remands the Adversary Proceeding to the Bankruptcy Court for further proceedings, Movants may again assert their jury trial rights and seek withdrawal of the reference for trial purposes.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of January 2025.

                                                         */s/ Kari A. Dooley*
                                                        KARI A. DOOLEY
                                                        UNITED STATES DISTRICT JUDGE